14 423
80 410

## Benedict vs. The State.

**On the trial of a person indicted for murder, threatening language used by the defendant shortly before the homicide, indicating an intent to take life, but not referring expressly to any particular person, was properly received in evidence.**

June Term, 1861.

Benedict v. The State.

But if the threats proven were made by the defendant against persons other than the deceased, they should not be regarded as evidence of malice against *him*; and it was error for the court to refuse to give the jury an instruction to that effect.

It was error for the judge, in such a case, to state to the jury that the evidence on the part of the state was sufficient, in his opinion, to sustain the issue on its part, and that the proof on the part of the accused was not sufficient to entitle him to an acquittal.

Upon an indictment for murder, the verdict, after stating the title of the case, was as follows: "Charged with the murder of one M— M— on the 17th of October, A. D. 1857. The jury, after deliberation, agree that the said S— B— (the defendant), is guilty." *Held*, that the verdict was sufficient in form.

ERROR to the Circuit Court for *Portage* County.

Indictment for the murder of one McNamee. On the trial the defendant excepted to the admission of certain evidence, the nature of which is stated in the opinion of the court. After the testimony on both sides was closed, the record states in substance, that the judge decided, and declared to the jury, that in his opinion the several matters given in evidence on the part of the prosecution were sufficient to sustain the issue and convict the prisoner, and that the matters proved on his part were not sufficient to entitle him to a verdict of acquittal. The defendant asked the court to instruct the jury, 1. That threats by the prisoner to take life, without referring to the deceased, and directed against mankind generally, are not evidence of malice entertained by the prisoner against the deceased. 2. That previous threats made by the accused against persons other than the deceased, are not evidence to be used on the trial. These instructions were refused, and the case then went to the jury. The verdict, after stating the title of the cause, was as follows: "Charged with the murder of one Michael McNamee on the 17th day of October, A. D. 1857. The jury after deliberation agree that the said *Samuel S. Benedict* is guilty." The defendant moved successively for a new trial and in arrest of judgment, but the court overruled the motions. The cause was afterwards brought to this court on writ of error, and was remitted to the circuit court "with instructions that that court proceed to pronounce the judgment required by law." 12 Wis., 313. Before judgment was

pronounced pursuant to this direction, the defendant moved to set aside the verdict and for a new trial, on the grounds, 1. That certain evidence in relation to previous threats made by the defendant, which had no reference to the commission of the offense charged in the indictment, had been improperly admitted. 2. That the evidence was insufficient to sustain the verdict. 3. That the verdict was imperfect and illegal, and did not authorize the court to render a judgment and pronounce sentence thereon. This motion and a subsequent motion in arrest of judgment on account of defects in the verdict, were overruled.

*Ware & Miner*, for plaintiff in error, in support of the instructions asked by the accused, and refused by the court, cited Am. Crim. Law, 648; 3 Greenl. Ev., 14–16, 133 and note; Roscoe's Cr. Ev., 70, 71; Barbour's Cr. Law, 394, 398; 2 Russell on Crimes, 726; *Albricht vs. The State*, 6 Wis., 74. As to the insufficiency of the verdict, 1 Chitty's Cr. Law, 635; Barb. Cr. Law, 369; Archbold's Cr. Pr., with notes by Waterman (Ed. of 1853), 177; 2 Russell on Crimes, 725–6; Am. Cr. Law, 709–10. As to the statement of the court to the jury in regard to the sufficiency of the evidence on the part of the prosecution, *Commonwealth vs. Kimball*, 24 Pick., 366; *Hughes vs. The State*, 8 Humph., 75.

*J. O. Culver*, Assistant Attorney General, for the state.

December 11.

*By the Court*, DIXON, C. J. The objection of the prisoner's counsel to the proposition of the prosecuting attorney to show by the witness Bàchelor that, shortly before the commission of the alleged homicide, the prisoner, while exhibiting the knife with which he is charged to have committed it, said that he would take some man's life before the next Sunday, was properly overruled, and the testimony of that and the other witnesses to the prisoner's general threatening language, that the knife "would probably be the death of some person before the week was out," that he "had made up his mind to kill a man," and that if the witnesses "should hear of the death of any person before the week was out, they need not be alarmed," were correctly received and submitted to the consideration of the jury. Experience dem-

onstrates that the minds of many persons are so constituted that, when intent upon the commission of crime, secrecy becomes impossible, and they cannot refrain from giving vent to feelings of revenge or of malicious satisfaction at the anticipated occurrence, and that they often utter threats, and make mysterious and blind allusions to their objects and purposes, or boast what they will do. Such declarations, though to be received with greater caution and weighed with more care than those which refer directly to the subsequent criminal act, and though they may be less cogent evidence, are nevertheless admissible and should go to the jury to be considered by them in connection with the independent proof of the crime, for the purpose of showing the disposition from which it proceeded. Wills on Circumstantial Ev., 45; Burrill do.. 338–9. Being recent, relating to an offense of the same character, and uttered with an apparently deliberate purpose, it is for the jury, under proper instructions, to determine their effect; and if, from all the circumstances, the jury believe that the accused contemplated the offense at the time of making them, and uttered them with reference to it, they are at liberty so to apply them, and they then become strong evidence of the intention with which the act was done. But if the jury should find that they were unconnected with the offense charged, or related to some other, or were occasioned by sudden passion which exercised but a transient influence and resulted in no criminal action, or that they were spoken in jest or mere *bravado*, and without any criminal purpose, they would be bound in law and in conscience to disregard them in determining the question of intention, for which alone they are admitted. Burrill on Circumstantial Ev., 545. It being improbable that a person having no disposition to commit the crime would make such declarations, or that they are uttered without a corresponding motive, they are not to be excluded because they are general, or because the accused did not choose fully to divulge his plans, but are to be submitted to the discretion of the jury, to be applied as in their judgment the entire facts and circumstances of the case may require.

The foregoing remarks apply as well to the exceptions growing out of the refusal of the circuit judge to charge the jury that threats by the prisoner to take life, without referring to the deceased, were not evidence of malice, and show that the request was properly denied.

The exception to the decision and declaration of the circuit judge to the jury, that in his opinion the several matters produced and given in evidence on the part of the prosecution were sufficient to sustain the issue and to convict the prisoner of the charge, and that the matters produced on his part were not sufficient to entitle him to a verdict of acquittal, would, if there were no other, be fatal to the judgment, though we entertain not the slightest doubt that it has found its way into the record through an entire misapprehension of its true purport and meaning, and that the judge did not, in fact, thus improperly interfere with the functions of the jury. If this were the only error, we should be inclined, if possible, to allow the record to be corrected according to the facts, but as there is another for which we think the judgment must be reversed, it becomes immaterial. It is well settled, especially in prosecutions for crime, that it belongs to the jury alone to *weigh* the evidence, the province of the court being to determine whether the evidence offered is *conducive* to prove the fact. The statement in the record, instead of showing the facts as they actually occurred, seems rather to be the *form* adopted in civil actions when some special matter, set up and insisted upon by the defendant in bar of the plaintiff's action, is overruled by the court, and to which alone it is properly applicable. Or it may be that the counsel for the prisoner asked that the jury be instructed to return a verdict of acquittal, which is sometimes done where, upon a good indictment, there is a palpable failure of proof upon some points necessary in law to a conviction (*Commonwealth vs. Wade*, 17 Pick., 395), and that the judge refused to do so. At all events the bill of exceptions should in all cases contain a true history of the facts as they occurred at the trial.

We think that the court erred in refusing to give the second special instruction asked for the prisoner, "that previous

threats made by the accused against persons other than the deceased are not evidence to be used on the trial;" and for that the judgment must be reversed. It is true that the instruction is very inartistically drawn, but we do not think, because counsel fail to use the most appropriate language, that a person accused of a high crime should be thereby prejudiced in his legal rights, provided the instruction can be fairly understood and is such as he is entitled to have given. The sense of the instruction clearly was, that if the jury should find that the threats proved were made against persons other than the deceased, then they should not regard them as evidence of malice against him. This instruction was clearly proper, since it cannot be denied that there was some evidence from which the jury might have found that the threats, or some of them, were directed against others; and if the instruction had been given and the jury had so found, it needs no argument to prove that they should have disregarded them, or that menaces against one person are no evidence of malice towards another.

The verdict is sufficient in form. It cannot be that the law is so excessively exact in such matters that it makes a particular word so indispensable that another equally expressive cannot be used in its stead. The word "find" is more commonly used, but the word "agree," where employed with reference to the verdict of a jury, particularly in criminal cases, means precisely the same thing. Both signify that the jury, upon consideration of the evidence, have determined that the accused is guilty or not guilty of the crime charged. The word "agree" is almost invariably used when the jury are addressed upon the subject of their verdict. Mr. Chitty says (1 Chitty's Crim. Law, 635), that when the jury have come to a unanimous determination with respect to their verdict and return to the box to deliver it, the clerk then calls them over by their names and *asks them whether they agree on their verdict*; and it certainly cannot be a bad answer, if they reply that they *do agree*, and state what that agreement is.

For the reasons which have been advanced, the judgment of the circuit court must be reversed; and as the plaintiff in

error has *asked* a new trial (*Keenan vs. The State*, 8 Wis., 132; *In re Keenan*, 7 Wis., 695), the cause must be remanded, and a *venire de novo* awarded.

The plaintiff in error is now confined in state prison at Waupun. He will be surrendered to the sheriff of the county of Portage, who will retain him in custody until further proceedings, or until he be thence discharged according to law.