[No. 1001.]

# THE STATE OF NEVADA, RESPONDENT, v. CHARLES WESLEY HYMER, APPELLANT.

TESTIMONY—MOTION TO STRIKE OUT.—If a motion is made to strike out all the testimony of a witness, when any portion thereof is admissible, the motion should be denied.

INSTRUCTION RELATING TO MURDER.—*Held*, that the court did not err in
instructing the jury as to the distinction between murder in the first
and murder in the second degree. (See *instruction in statement of case.*)

INSTRUCTION—CREDIBILITY OF DEFENDANT AS WITNESS.— *Held*, that the
court did not err in instructing the jury relative to the weight and effect
to be given to defendant's evidence. (See instruction in statement of
case.)

RELEVANT TESTIMONY—ADMISSIBILITY OF THREATS.—A witness testified
that about three hours before the killing, the defendant made the re-
mark, while treating a crowd in a bar-room, " It is the first time I have
been drunk since I have been in town; I got drunk just to kill two or
three s—s of b—s in this town to-night; and I'll do it; too:" *Held*, ad-
missible as tending to show that he had the deceased in his mind at the
time he uttered the threats. (Beatty, C. J., and Leonard, J.)

APPEAL from the District Court of the Fourth Judicial
District, Humboldt County.

The defendant was convicted of murder in the first de-
gree and sentenced to be hanged.

The instruction relating to murder referred to in the
opinion of the court reads as follows: " In dividing mur-
der into two degrees, the legislature intended to assign
to the first, as deserving of greater punishment, all mur-
der of a cruel and aggravated character, and to the second,
all other kinds of murder which are murder at common
law, and to establish a test by which the degree of every
case of murder may be readily ascertained. That test may
be thus stated: Is the killing willful (that is to say, in-
tentional), deliberate, and premeditated? If it is, the
case falls within the first, and if not, within the second
degree. There are certain kinds of murder which carry
with them conclusive evidence of premeditation. These
the legislature has enumerated in the statute, and has taken
upon itself the responsibility of saying that they shall be
deemed and held to be murder of the first degree. These
cases are of two classes. First, where the killing is per-
petrated by means of poison, etc. Here the means used
is held to be conclusive evidence of premeditation. The
second is where the killing is done in the perpetration
or attempt to perpetrate some one of the felonies enumer-
ated in the statute. Here the occasion is made conclu-

sive evidence of premeditation. When the case comes within either of these classes, the test question, 'Is the killing willful, deliberate, and premeditated?' is answered by the statute itself, and the jury have no option but to find the prisoner guilty in the first degree. Hence, so far as these two cases are concerned, all difficulty as to the question of degree is removed by the statute. But there is another and much larger class of cases included in the definition of murder in the first degree, which are of equal cruelty and aggravation with those enumerated, and which, owing to the different and countless forms which murder assumes, it is impossible to describe in the statute. In this class the legislature leaves the jury to determine, from all the evidence before them, the degree of the crime, but prescribes for the government of their deliberations the same test which has been used by itself in determining the degree of the other two classes, to wit: the deliberate and preconceived intent to kill. It is only in the latter class of cases, that any difficulty is experienced in drawing the distinction between murder of the first and murder of the second degree, and this difficulty is more apparent than real. The unlawful killing must be accompanied with a deliberate and clear intent to take life, in order to constitute murder of the first degree. The intent to kill must be the result of deliberate premeditation. It must be formed upon a pre-existing reflection, and not upon a sudden heat of passion sufficient to preclude the idea of deliberation. There need be no appreciable space of time between the intention to kill and the act of killing—they may be as instantaneous as successive thoughts of the mind. It is only necessary that the act of killing be preceded by a concurrence of will, deliberation, and premeditation on the part of the slayer, and if such is the case, the killing is murder in the first degree, no matter how rapidly these acts of the mind may succeed each other, or how quickly they may be followed by the act of killing."

Instruction number five, referred to in the opinion of the court, reads as follows: "The defendant has offered himself as a witness on his own behalf in this trial, and in consider-

ing the weight and effect to be given his evidence, in addition to noticing his manner and the probability of his statements taken in connection with the evidence in the cause, you should consider his relation and situation under which he gives his testimony, the consequences to him relating from the result of this trial, and all the inducements and temptations which would ordinarily influence a person in his situation. You should carefully determine the amount of credibility to which his evidence is entitled; if convincing, and carrying with it a belief in its truth, act upon it; if not, you have a right to reject it."

*M. S. Bonnifield, L. A. Buckner, and L. J. Maddux,* for Appellant:

I. The court erred in refusing to strike out the testimony of the witness Collins. It is not shown that the threats had any relation to Thomas K. West, the deceased. (*State v. Walsh,* 5 Nev. 315.

II. The motion to strike out was proper, and made at the right time. (*Sharon v. Minnock,* 6 Nev. 377.) Threats are material to show intent, and if the one offered to be proved against defendant had been relevant, would have been construed to show malice, and was considered by the court as relevant, and proving intent—malice. (Whart, Crim. Law, sec. 635, "Threats," and cases cited.)

*N. Soderberg,* also for Appellant:

I. The court erred in instructing the jury relative to the test or distinction between murder in the first and murder in the second degree. (*State v. Preston,* 34 Wis. 675.)

II. The instruction as to the weight and effect to be given to defendant's evidence, was erroneous, because it charged the jury in regard to matters of fact, and amounted to an admonition to the jury to disbelieve defendant.

*M. A. Murphy,* Attorney-General, for Respondent:

I. Where a party moves to rule out testimony, the grounds of objection must be distinctly stated. (*State v. Wilson,* 8 Iowa, 407; *Hochrieter v. People,* 2 N. Y. C. of Ap.

363.) If it was in relation to threats, we claim that it was material to prove malice aforethought. (*People* v. *Cronin*, 34 Cal. 191; *Thompson* v. *State*, 55 Ga. 47, 592; *State* v. *Wm. Ford*, 3 Strobh. 517; *State* v. *Lewis*, 45 Iowa, 20; *Hopkins* v. *Commonwealth*, 50 Penn. 9; *Terrell* v. *Commonwealth*, 13 Bush (Ky.), 246.)

II. There was no error in the instructions given by the court. They clearly state the law in relation to the different degrees of murder: (*State* v. *Jones*, 64 Mo. 391; *State* v. *Harris*, 12 Nev. 414; *People* v. *Williams*, 43 Cal. 346; *People* v. *Cotta*, 49 Id. 166.) The law fixes no time for deliberation or reflection. To constitute murder, it is sufficient if the design to murder was formed before the striking of the fatal blow. (*State* v. *Harris*, 12 Nev. 414; *State* v. *Millain*, 3 Id. 410; *People* v. *Williams*, *supra*; *People* v. *Cotta*, *supra*; *State* v. *Jones*, *supra*; *Duebbe* v. *State*, 1 Tex. Ct. of Ap. 159; *People* v. *Clark*, 7 N. Y. 385, and note *a* on page 395.

III. The instruction of the court in relation to the credibility of the defendant, who offered himself as a witness in his own behalf, is correct. (*People* v. *Cronin*, 34 Cal. 191.)

*S. S. Grass*, also for Respondent.

By the Court, HAWLEY, J.:

1. The court did not err in refusing to strike out *all* the testimony of the witness Collins. Some, if not all, of the testimony set forth in the bill of exceptions was clearly admissible. But even if it was not, the objection of appellant would still be untenable, because the bill of exceptions does not show that it contains all of the testimony of said witness.

The presumption would therefore be, that the witness did give material and relevant testimony.

If appellant desired to have the court strike out any portion of the testimony, he should have specified that part which he considered irrelevant and immaterial. His mo-

tion "to strike out all the testimony of the witness" was properly overruled.

2. The court did not err in instructing the jury as to the test or distinction between murder in the first and murder in the second degree. The instruction complained of is the same as was given in *The State* v. *Harris*, 12 Nev. 414. This court there said, "that it contains no substantial error."

3. The court did not err in giving respondent's instruction number five, relative to the weight and effect to be given to defendant's evidence.

This instruction was copied from *The People* v. *Cronin*, 34 Cal. 195, 196. We concur in the opinion, expressed by the court in that case, that the instruction "was in all respects legal and proper."

There is nothing in the instruction "charging the jury in regard to matters of fact," as claimed by appellant.

4. The other grounds upon which appellant moved for a new trial are equally untenable, and, as they are not relied upon by appellant's counsel, need not be specifically noticed.

The judgment and order overruling defendant's motion for a new trial are affirmed, and the district court is directed to fix a day for carrying its sentence into execution.

BEATTY, C. J., concurring:

In addition to the reasons stated by Justice Hawley, I think the ruling of the district judge, on the motion to strike out the testimony of the witness Collins, is sustainable on the ground that the particular testimony complained of was material and relevant. It was to the effect that about three hours before the killing, the defendant, while treating a crowd in a bar-room, made these remarks: "It is the first time I have been drunk since I have been in town; I got drunk just to kill two or three s——s of b——s in this town to-night, and I'll do it, too."

It was for the jury to determine, from all the circumstances, whether this was mere idle vaporing or a correct expression of the defendant's state of mind. If it was the

latter, and there was any circumstance from which they might infer that the deceased was one of the persons intended, it should express malice. The bill of exceptions contains but little of the testimony, but from that little, and the instructions given to the jury at the request of the defendant, it sufficiently appears that he provoked the difficulty with the deceased, and that the defense was, that he had in good faith endeavored to retire from the contest before firing the fatal shot. The fact, thus appearing, that within three hours, or thereabouts, after threatening that he would kill two or three persons in that town that night, he killed the deceased in a difficulty which he himself provoked, is certainly some evidence tending to show that he had the deceased in his mind at the time he uttered the threats.

Precisely the same sort of general indefinite threats— threats against "two or three men"—that were proved in this case, were proved in the case of *The State* v. *Barfield,* 7 Ired. 303, for the purpose of showing express malice, and the defendant was convicted of murder. The judgment, it is true, was reversed, but not because the evidence was deemed irrelevant or immaterial, for the court held on the contrary that it was material, if *from it and other circumstances* the jury inferred that the deceased was one of the persons threatened (p. 306). The truth was, however, that all the circumstances proved in that case tended very strongly to show that the threats which were made more than a month before the homicide, had no reference to the deceased; and the state's attorney expressly admitted in the trial that the deceased was not one of the persons intended. The court, notwithstanding this admission, instructed the jury that the evidence in regard to the threats might be considered in determining the question of malice. This instruction, not the admission of the testimony, was held to be error. The decision, in fact, both by expression and implication, recognizes a doctrine that seems to me entirely reasonable—that in order to render threats material to the issue in prosecution for murder, it is not essential that the deceased should be actually named in

connection with the threat.   If there are circumstances tending to show that he was the person intended, they, together with the threats, must be submitted to the jury, under proper instructions.   The circumstances of this case were, in my opinion, fully sufficient to justify that course.

The threats were made by defendant about dusk on the fourth of May; they were directed against persons in that town, and were to be carried into execution that night. The killing took place in that town between ten and eleven o'clock the same evening, and was the result of a conflict provoked by the defendant. · There was in fact a literal correspondence between the promise and performance, and the evidence was sufficient *prima facie* to warrant the jury in finding that the man killed was one of those whom the defendant had avowed his purpose to kill.

It is not denied in *State* v. *Walsh*, 5 Nev. 315, that where a person not named is threatened, his identity may be proved by circumstances—the implication is that it may be; but it was held that the facts proved in that case did not tend to show that the threats (if they were threats to kill) were directed at the person killed.   It is not necessary to question the correctness of that conclusion in order to hold that in this case the evidence complained of was properly submitted to the jury, for here the circumstances were much more significant.

For these reasons, in addition to the reasons stated by Justice Hawley, I concur.