## THE STATE v. CRABTEE, *Appellant.*

### Division Two, July 1, 1892.

1. **Criminal Law**: MANSLAUGHTER: INSTRUCTIONS. On a trial for murder there was evidence tending to show that deceased struck defendant with a club, and that afterwards and during the struggle defendant drew his pistol and shot while in the heat of passion produced by the assault of the deceased, but not under such circumstances as justified his act on the ground of self-defense. *Held* that the court erred in not instructing on its own motion on manslaughter in the fourth degree.

2. ———: EVIDENCE: THREATS. General threats made by defendant before the homicide and having no reference to the deceased were not admissible in evidence.

3. ———: ———: DYING DECLARATIONS. Dying declarations made *in extremis,* under the belief death is impending, are competent evidence on a trial for murder.

*Appeal from Gasconade Circuit Court.*—HON. R. HIRZEL, Judge.

REVERSED AND REMANDED.

*Thos. B. Crews* for appellant.

(1) "General threats are competent when clearly connected by independent evidence with some subsequent criminal action." *State v. Grant,* 79 Mo. 137. But not otherwise. Wharton on Criminal Evidence, sec. 756; *Redd v. State,* 68 Ala. 492. (2) It was not shown, and does not appear from the statement itself, that the dying declaration testified to by witness, Conrad Meyers, was made *in extremis,* and, furthermore, it contains an expression of the declarant's opinion of vital consequence. Such declarations are to be limited and restricted to the identification of the prisoner and deceased and to the act of killing, and all circumstances immediately attending said act and forming part of the *res gestæ.* *State v. Chambers,* 87 Mo. 406; *State v. Vansant,* 80 Mo. 67; *State v. Draper,* 65 Mo. 335; *State v. Parker,* 96 Mo. 382; *State v. Elkins,* 101 Mo. 344. (3) There was abundant evidence of a direct and unprovoked attack on accused by deceased and of the use of personal violence by him in the inception of the conflict. The whole evidence shows lack of determination to kill, and the court should have instructed the jury as to the law of manslaughter, although not asked by the defense at the time. *State v. Branstetter,* 65 Mo. 149; *State v. Cooper,* 45 Mo. 65; *State v. Sloan,* 47 Mo. 604. There was evidence of a legal provocation; a vigorous personal assault upon the accused, testified to by accused and two other witnesses, and the scars made by the deceased's club were exhibited to the jury, and under such circumstances "the inference of malice is overcome," and if death results from the use of a deadly weapon the crime is manslaughter and not murder. *State v. Holme,* 54 Mo. 165; *State v. Starr,* 38 Mo. 277; 3 Greenleaf's Evidence, 122, *et seq,; State v. Ware,* 62

Mo. 597; *State v. Jones,* 61 Mo. 232; *State v. Bryant,* 55 Mo. 75; *State v. Palmer,* 88 Mo. 568; *State v. Banks,* 73 Mo. 592; *State v. Tate,* 12 Mo. App. 327; *State v. Ellis,* 74 Mo. 207.

*John M. Wood,* Attorney General, and *C. O. Bishop* for the State.

(1)  There was no middle ground in the case; it was either murder or justifiable homicide; and it does not follow that, because the evidence warranted an instruction on justifiable homicide, there should necessarily have been given instructions on some lower degree of homicide, even on murder of the second degree.   *State v. Starr,* 38 Mo. 270; *State v. Kilgore,* 70 Mo. 546; *State v. Johnson,* 76 Mo. 121; *State v. Jones,* 79 Mo. 441; *State v. Ramsey,* 82 Mo. 133; *State v. Anderson,* 86 Mo. 309; *State v. Wilson,* 86 Mo. 520; *State v. Anderson,* 89 Mo. 312; *State v. Rider,* 95 Mo. 475.  (2)  The trial court committed no error in admitting as a dying declaration the statement of the deceased as to the circumstances of the shooting— the statement being made within a half hour after the shooting, and when declarant believed he was about to die from the wound.   It appears from the record that the trial court was exceedingly cautious in the admission of this evidence.   When profert of it was made, the jury was excluded from the courtroom, and the witness who was to testify as to the statement was closely examined by counsel on both sides, and by the court.

THOMAS, J.—The defendant appeals from a sentence to imprisonment in the penitentiary for forty-five years by the circuit court of Gasconade county for murder of the second degree.

The evidence on the part of the state tended to prove that defendant had been an employe of the St. Louis & San Francisco Railway Company, but at the time of the homicide had quit that service; that Louis H. Wilmers, the deceased, was a police officer of the city of St. Louis, and being dressed in the uniform of such officer approached defendant on the evening of August 25, 1890, at a saloon on the corner of Chouteau avenue and Manchester road in that city, and told him he had been informed he had a pistol, and, if he had, it was his duty to arrest him; defendant denied having a pistol; the officer then felt of his person and defendant shoved him off, causing the officer to stagger; defendant ran across the street and down to the railroad yards, and was followed a short distance by the officer who returned, however, in a short time to the saloon; in about twenty minutes afterwards the officer went to the railroad yards and the defendant met him, pistol in hand, and said, "I have got you now and I will give it to you;" the officer closed in on him and the defendant shot him in the back, and then stood over him for a second and said, "I will blow your head off, God damn you," and ran away, and the officer shot at him as he ran. The defendant left on a freight train that night, and was arrested a day or two afterwards in Dent county, Missouri. To the officer having him in custody he stated he was drunk when he shot, and that the officer struck him several times with his club. It does not appear that the officer made any attempt to arrest defendant at the time of the difficulty, and up to that evening they had been acquaintances and on friendly terms. The officer survived some time, but finally died of the wound inflicted on this occasion by defendant. What occurred between the parties at the time of the shooting was proven on the part of the state mainly by the dying declarations of the deceased.

On the part of defendant the evidence tended to prove that after the meeting at the saloon he went to the railroad yards to take a freight train going west, sat down on an embankment to wait for the train; that two boys came to him there, and, during a casual conversation between them, the deceased came up and without saying a word struck defendant three blows on the face and head with his police club; that they clinched and fell to the ground, the deceased on top; while down deceased drew his pistol, and then the defendant drew his pistol and shot once and only once. These facts were detailed by defendant and the two boys substantially alike. The defendant testified that he shot in defense of his person, believing at the time the deceased intended to kill him, and that the deceased did not attempt to arrest him or tell him he intended to arrest him.

The court of its own motion, by its instructions, authorized the jury to find defendant guilty of murder of the first or second degree or to acquit him on the ground of self-defense. Defendant in his motion for new trial alleged error in the failure of the court to instruct on manslaughter.

I.   The state insists that the evidence makes out a plain case of murder or self-defense, but we do not think so.   If deceased struck defendant with his club, and afterwards and during the struggle defendant drew his pistol and shot while in a heat of passion produced by the assault of deceased, but not under such circumstances as justified him on the ground of self-defense, he was guilty of manslaughter of the fourth degree even though he intended to kill.   *State v. Berkley,* 92 Mo. 41; *State v. Thomas,* 78 Mo. 327.

The facts would have justified the jury in finding defendant guilty of this degree of manslaughter, and the court ought of its own motion to have so instructed.

II. The court erred also in admitting the testimony of Ollie Leonard as to threats made by defendant some time prior to the homicide. These threats were in general terms applied to the members of his own family if to any one in particular, and certainly had no reference whatever to deceased, and ought to have been excluded. According to the evidence in this record defendant and deceased had not had any trouble and had been on friendly terms till their meeting at the saloon on the evening of the homicide, and general threats made by defendant some time prior could not have throw any light on the transaction at the time of the rencounter between him and deceased.

III. The court properly admitted in evidence the dying declarations made by deceased on the evening he was shot. These, we think, were made *in extremis*, under the belief that death was impending.

For the reasons above given the judgment will be reversed and the cause remanded for new trial. All concur.