# WILLIAM H. FRICK

## *vs.*

## STATE OF MARYLAND.

*Exceptions: should not include different questions in the same—.*
. *Criminal Law: murder; general threats to*
*kill; when evidence.*

In general, an exception which includes a number of different questions will not be considered on appeal.            p. 123·

But on an appeal from a conviction for a serious offense, where the differences between the questions reserved and raised in a single exception were but slight, and where the precise question practically presented in the exception had not been adjudicated, the question so raised by a single exception was considered directly and passed upon by the Court of Appeals, although the single exception did in form present several rulings.                    p. 124·

In general, a threat by one accused of murder to kill someone not definitely named, if made shortly before the killing, is admissible in evidence where other facts give individualization to it; but such general threats not shown to have reference to the deceased may not be proved.            pp. 127-128·

*Decided February 10th, 1916.*

Appeal from the Criminal Court of Baltimore City. (DOBLER, STUMP and BOND, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Raymond S. Williams* (with whom was *Harry B. Wolf* on the brief), for the appellant.

*Albert C. Ritchie, the Attorney General,* and *Horton S. Smith, Assistant State's Attorney,* (with whom was *Wm. F. Broening, the State's Attorney for Baltimore City,* on the brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

William H. Frick, a policeman for the Baltimore and Ohio Railroad was indicted for the murder in the City of Baltimore of Evers Chaney, a white youth. He plead not guilty, and elected to be tried before the Court in preference to a jury.

The trial resulted in a verdict of not guilty of murder, guilty of manslaughter, and sentence was duly imposed.

Fourteen bills of exception were reserved in the course of the trial, all upon questions of the admissibility of evidence. At the hearing of this appeal all the exceptions were abandoned by the appellant except the 3rd, 4th, 6th, 7th and 9th.

The State insists that the 1st, 2nd, 3rd, 4th, 5th, 7th, 8th, 9th and 14th exceptions were not in such form as properly to be considered, for the reason that in each of these exceptions a number of questions have been included in a single exception. This method of taking exceptions has been frequently condemned by this Court. *Ellicott* v. *Martin,* 6 Md. 517; *Tall* v. *Steam Packet Co.,* 90 Md. 250; *Acker M. & C. Co.* v. *McGaw,* 106 Md. 560; and in *Junkins* v. *Sullivan,* 110 Md. 539; *B. & O. R. R. Co.* v. *Rueter,* 114 Md. 700; *Cit. Mut. F. I. Co.* v. *Conowingo Br. Co.,* 116 Md. 439 and *Harris* v. *Hipsley,* 122 Md. 435, and *Weeks* v. *State,* 126 Md. 223. This Court refused to consider exceptions which contained this vice. In most of these cases under one excep-

tion was sought to be included essentially distinct propositions, and thus differed from the exceptions criticized by the State in this case. Without the slightest disposition to relax in any degree this salutary rule, but because in part of the slight difference in which it comes before the Court in this record, and in part because of the seriousness of the case, and in part because the precise question now presented has not been adjudicated by this Court, it seems better to deal directly with the question which the appellant now raises.

Each of the exceptions upon which there is any contention present one and practically the same point, namely, the admissibility of threats made by the defendant at various times before he shot the deceased. A witness Davis testified that on the day before the shooting the accused had said in a bar-room not far distant from where the homicide took place, that "he was going to kill some of them G—d d—n niggers," and two days earlier had heard the accused make use of the same expression. Another witness for the State, Mrs. Laig, testified that two weeks before Chaney was shot she heard the accused say: "He don't get justice at the Station Houses when he brought anybody up there; that the next one he caught on the car, he was going to shoot and take them either crippled or their bodies to the Station House as evidence." Charles W. Laig, a State's witness, and the husband of the preceding witness, testified to having the same conversation with the accused to which his wife had testified, and gave substantially the same expression as having been uttered by the accused.

Miss Nellie Gibney, a State's witness, without fixing the date, testified to having heard the conversation in Mrs. Laig's house, and gave as the language of the accused substantially the same expression as that testified to by Mr. and Mrs. Laig; it was to the admissibility of these threats that the exceptions reserved by the appellant, and now insisted on, apply.

The rule governing the admissibility of such evidence is stated in 21 *Cyc.* 922, as follows: "A threat to kill or injure some one not definitely designated is admissible in evidence

where other facts adduced give individuation to it; but general threats not shown to have reference to the deceased can not be proved."

For this statement the following cases are cited: *Redd* v. *State,* 68 Ala. 492; *State* v. *Crabtree,* 111 Mo. 136; *Melton* v. *State* (Texas Crim. Apps.), 83 S. W. 822. The author of the article in *Cyc.* then continues, "So also words uttered under such circumstances as *prima facie* to import a threat are admissible."

In this case the threat was a general one; it was not directed against a particular individual, nor unless the use of the term "niggers" can be so construed, was it a threat against a class; and even if regarded as a threat against a class, it was not a class to which the defendant belonged. It must, therefore, be regarded in the light merely of a general threat, without any individualization.

The cases in this country are not entirely harmonious as to the proper rule to be applied in such cases. The Courts of Texas, Missouri and Alabama have in a number of instances held such general threats to be inadmissible; but hold them as admissible if directed against an individual or a class. In the case of *Redd* v. *State, supra,* while the threats attempted to be offered in evidence were excluded by the Court, because too general, the Court, nevertheless, uses this language: "The force of the threat may affect its weight as evidence, while not rendering it inadmissible. Whatever may be its force, whether absolute or conditional, whether it indicates a purpose only contemplated or fully matured, it is admissible in evidence because indicating the state of mind of the accused and of the feelings he entertained or cherished towards the deceased."

In the *State* v. *Crabtree,* before cited, it appeared that the accused and the deceased had been on friendly terms up until the day of the homicide, and it was held error to have admitted general threats made by the defendant a considerable period before that time. A large number of cases upon this subject are collected in an extended note in *Wilson* v.

*Florida,* 17 L. R. A. 654, and among the cases there cited
is the case of the *State* v. *Larkins,* 47 Pac. 945; in that case
it appeared that: "Three hours before the homicide the de-
fendant said to a third party, 'I would like to take you with
me, but I have a dirty piece of business to do tonight.' An
hour after saying this the defendant went to the house of
the deceased." We think that this evidence was admissible.
Being connected as it was with the declaration and acts of
the accused at the house of the deceased so soon afterwards
it tended to show animus on the part of the accused towards
the deceased, and further the declaration of the accused
tended to show an abandoned, reckless and malicious spirit
on the part of the accused. This conclusion is supported by
*Jordan* v. *State,* 79 Ala. 9.; *Anderson* v. *State,* 79 Ala. 5;
*Harrison* v. *State,* 79 Ala. 29; *Dixon* v. *State,* 13 Fla. 636;
*State* v. *Grant,* 79 Mo. 113; *State* v. *Hymer,* 15 Nev. 49;
*Benedict* v. *State,* 14 Wis. 423. Vague threats, not against
any particular person have often been admitted and are com-
petent evidence. *Rex* v. *Barbot,* 18 Howell's State Trials,
1251; *Benedict* v. *State,* 14 Wis. 423."

In line with this case are the following cases: *State* v.
*Hoyt,* 47 Conn. 539. In which the language used by the
accused was: "I don't know but I shall be in Canada in a
little less than a week; don't know but I shall kill some one
in a week." This was used in a conversation relating to the
defendant's father. The testimony was admissible. It rises
to the character of a threat, which from the conversation
about the father and his estate the jury would have had the
right to construe as aimed at the father. It showed most
clearly the revengful and murderous passions which were
taking possession of the mind of the accused.

In *Hopkins* v. *Commonwealth,* 50 Pa. 9, it was held that:
"Threats made by a prisoner within an hour before the
commission of the murder that he would kill somebody be-
fore 24 hours were evidence of malice prepense though they
did not expressly refer to the deceased, and that if he killed

anybody in pursuance of such malice it was murder in the first degree."

In the case of *Benedict* v. *State,* 14 Wis. 423, the defend-ant had made use of the following expression: "I will take some man's life before next Sunday, and speaking of a knife, it 'would probably be the death of some one before the week was out'; that he 'had made up his mind to kill a man,' and that if the witness 'should hear of the death of any person before the week was out they need not be alarmed.' " These were all admitted over objection, and the ruling was sus-tained.

And to the same general effect as the cases already referred to, are the following: *Whittaker* v. *Commonwealth,* 13 Ky. Law Rep. 504; *State* v. *King,* 9 Mont. 445; *Hodge* v. *State,* 26 Fla. 11.

In this State the case most nearly in point is *Kernan* v. *State,* 65 Md. 253, in which on the subject of general threats JUDGE IRVING uses the following language: "It can not have been offered to show his character for turbulence and was not admitted for such purpose. A simple act of that kind would not prove that he had that character. But such an act so soon followed by the killing of a man did show a reckless and mischievous frame of mind at a period so near the killing as to be admissible though the thing itself may not, possibly, be legitimately part of the *res gestae.* We think it was evidence to show that he was armed and pre-pared to kill though it did not of itself show intention to kill the deceased."

And the principle upon which all of these cases rests is that laid down in *Wills on Circumstantial Evidence,* page 62, where the writer says: "It is not uncommon with per-sons about to engage in crime to utter menaces, or to make obscure and mysterious allusions to purposes and intentions of revenge, or to boast to others, whose standard of moral conduct is the same as their own, of what they will do or to give vent to expressions of revengeful purposes or of ma-lignant satisfaction at the anticipated occurrence of some

serious mischief. Such declarations or allusions are of great moment when clearly connected by independent evidence with some subsequent criminal action. The just effect of such language is to show the existence of the disposition from which criminal actions proceed, to render it less improbable that a person proved to have used it would commit the offense charged, and to explain the real motive and character of the action."

Additional objections were urged against the admission of the threats testified to by Mr. and Mrs. Laig and Miss Gibney, but the remoteness or nearness of time as to threats and declarations, pertaining to an act subsequently committed, makes no difference as to the competency of the evidence, it goes only to the amount of weight to be attached to it; *Keener* v. *State,* 18 Ga. 194; *Cribbs* v. *State,* 86 Ala. 613.

In *Pate* v. *State,* 94 Ala. 14; the threats testified to had been made four months before the homicide was committed; in *State* v. *Bradley,* 64 Vt. 466; the lapse of time had been from six to eight months; and in *Peterson* v. *Toner,* 80 Mich. 350; *Territory* v. *Roberts,* 9 Mont. 12, and *Babcock* v. *The People,* 13 Col. 515, the threats had been made three years before the assault out of which these cases arose, took place.

In accordance with expressions of JUDGE IRVING already given, and the preponderance of opinion of the Courts of this country, the threats in the present case were admissible, and the trial Court committed no error in its rulings.

*Judgment affirmed.*