STATE *v.* LOUIS GALVANO and ALONZO EMERY.

(*January* 20, 1930.)

PENNEWILL, C. J., RICE and RODNEY, J. J., sitting.

*Reuben Satterthwaite, Jr.,* Attorney-General, *Charles F. Richards* and *David J. Reinhardt, Jr.,* Deputy Attorneys-General, for the State.

*James R. Morford* for the defendant, Louis Galvano.

*John J. Morris, Jr.,* for the defendant, Alonzo Emery.

Court of Oyer and Terminer for New Castle County, January Term, 1930.

No. 54, January Term, 1930.

412

414

PENNEWILL, C. J.: ▐ Under the authority of the Delaware cases referred to, as well as what we conceive to be the preponderance of authority outside of this state, we feel constrained to overrule the objection.

Refreshing his memory from his transcribed shorthand notes, taken at the time, the witness then testified to the confession of Galvano that he had killed Cline in this county and state; that he had killed him with a pistol and the mode of such killing.

The State called as a witness one George W. Johnson, who did not answer. Whereupon, the respective counsel in the case conferred with the court privately regarding the proposed testimony of Johnson, and requested that they be permitted to argue the question of its admissibility during the absence of the witness. Thereupon, the court instructed the jury to retire to their room and proceeded to hear the argument.

PENNEWILL, C. J.: We understand, Mr. Reinhardt, what you propose to prove by the absent witness, and that you, Mr. Morris, representing the defendant, Emery, will resist the introduction of that testimony.

Mr. Morris: I do not know that we are quite together on what this witness will say, if examined, but even if his testimony will go as far as claimed by the Deputy Attorney-General, it will not be admissible.

I understand that the State expects to prove by Johnson that the defendant, Emery, approached him some two weeks before the night of the twenty-fourth of December, the date alleged in this indictment, suggesting that they rob somebody, or even, perhaps, "bump him off," as they call it. If I understand the proposed testimony correctly, it would not name the deceased, Cline, or refer to

the night in question, but would merely involve the suggested commission of an offense with Johnson and not with Galvano.

There is, therefore, nothing about the evidence which the State seeks to introduce to show that it is a part of a general scheme or plan, or that it had anything to do with the intent of Galvano or Emery to commit the crime in question.

The only purpose for which it can be offered is to show a general tendency on the part of Emery to commit some crime; not the crime of murder, but, perhaps, the crime of robbery.

I submit that it is not only improper but unfair for the State to offer, as a part of its case, anything to show a criminal tendency on the part of a defendant. *Whart. Cr. Ev., vol.* 1, *pp.* 192, 193, 247. It is another way of attempting to attack his character and blacken his reputation in the eyes of the jury when character has not been put in evidence by the defense. Perhaps statements made by the defendants, or either of them, if they showed a plan by them to rob Cline, or to hold him up in this way, might be admissible, though I have grave doubts even as to that, and can find no authority for it. *Jones on Evidence, vol.* 2, *p.* 1173.

PENNEWILL, C. J. (*Interrupting*): We think we will hear what the State has to say.

Mr. Reinhardt: The statements made to Johnson are merely offered to show a malignant nature and an intent to kill someone; and from such statements Cline could be included within that intent. 30 *C. J.* 155, 156; *Commonwealth v. Page,* 265 *Pa.* 273, 108 *A.* 527; *Underhill on Criminal Evidence,* § 508, *p.* 732; *Hopkins v. Commonwealth,* 50 *Pa.* 9, 88 *Am. Dec.* 518; *Com. v. Troup,* 302 *Pa.* 246, 153 *A.* 337.

We expect to show that Emery approached Johnson shortly before Cline was killed and asked Johnson if he would meet him near Delaware City; that he would have somebody he knew had money and bump him off and take his money and give him (Johnson) half of it, and that he would see him a couple of nights beforehand so that they could plan how it should be done.

The indictment alleges that Cline was killed December 24, and, if it be contended that the statement made was too long before he

was killed to make it admissible, our reply would be that remoteness here would merely affect the weight of the evidence and not its admissibility. 35 *C. J.* 156; *Frick v. State,* 128 *Md.* 122, 97 *A.* 138; *Com. v. Troup,* 302 *Pa.* 246, 153 *A.* 337.

PENNEWILL, C. J.: In addition to the statements made by the defendants was there any real or substantial evidence in the cases that you have cited to show that they were connected with the homicides for which they were being tried?

Mr. Reinhardt: There was other evidence in *Hopkins v. Com.,* 50 *Pa.* 9, 88 *Am. Dec.* 518, and in *Com. v. Troup,* 302 *Pa.* 246, 153 *A.* 337, but the report of *Com. v. Page,* 265 *Pa.* 273, 108 *A.* 527, does not disclose what other evidence was introduced.

The witness, George W. Johnson, having arrived, the jury was again brought into the court room. On examination by Mr. Satterthwaite, he then testified as follows:

Q. Were you a private at Fort Du Pont in November and December of last year—last fall?

A. Yes, sir.

Q. Do you know Alonzo Emery, the man here in the box (indicating the defendant, Emery)?

A. I do.

Q. How long have you known him?

A. A year and a half.

Q. Did you have any conversation with Emery during the month of December in Delaware City?

A. Yes, sir.

Q. About when was this conversation—about what time in the month?

A. Around the second week in December, about the 14th or 15th.

Q. What did Emery state to you at that time and place?

Mr. Morris: I object to the question. I stated my reasons while we were waiting for this witness.

PENNEWILL, C. J.: Of course, we know what the question is, and probably what the answer will be. We wish to say that we are in some doubt as to the admissibility of this testimony. It is an

important question both to the State and to the defendant, Emery, and we have not been able to examine the authorities with as much care as the importance of the question demands. However, we propose to admit this testimony now, and, if, after a further examination during the recess, we conclude that it was improperly admitted, we will strike it out in the morning.

A. He asked me if I would meet him out along around Delaware City or right out close beyond it, and he said he would have somebody he knew had money and bump him off and take his money, and he would give me half of it. He said he would see me a couple of nights before this was to happen, so that we could make preparations how it was to be done.

The Court, desiring further time to examine the authorities, did not decide whether the testimony admitted over the objection of counsel for Emery should be stricken out, but stated that its admissibility would be passed on in charging the jury.

PENNEWILL, C. J., charging the jury:

The two defendants are charged in this indictment with murder of the first degree.

While the charge is murder of the first degree, it is possible, under such an indictment, for the jury to find any one of the following verdicts against both or either of the defendants, as the evidence in the judgment of the jury shall warrant, viz.: Guilty in manner and form as indicted; that is, murder of the first degree; guilty of murder of the second degree; guilty of manslaughter; or not guilty of any crime.

It is necessary, therefore, for the Court to tell you as clearly as we may what constitutes murder of the first degree, murder of the second degree, and manslaughter.

Murder of the first degree is where the killing was done with express malice aforethought, that is, where one person kills another with a sedate, deliberate mind and a formed design. Such formed design may be shown, for example, by lying in wait for the deceased, by threats that disclose a purpose to commit the act charged, by ill-will, spite or hatred against the deceased, or any

other circumstance which shows that the prisoner had the intention to kill when he made the attack on his victim. The deliberate selection and use of a deadly weapon is a circumstance which indicates a formed design to kill, in the absence of evidence showing a contrary intent.

If the prisoner, before committing the fatal act, had made up his mind to kill the deceased, it does not matter for how short a time such intention existed, if it was but for a moment and resulting in the killing, it was murder of the first degree.

In order, therefore, to find a verdict of murder of the first degree, the jury must be satisfied that the killing was done with express malice aforethought, that is, with a sedate, deliberate mind and formed design to kill.

Murder of the second degree is where the crime is committed with implied malice; that is, where the malice is not expressed, as in murder of the first degree, but is a necessary inference from the facts actually proved. It is where there is no deliberate mind or formed design to take life, but where the killing was, nevertheless, done without justification or excuse, and without adequate provocation. For example, where the killing was done without the design and premeditation required to make the act murder of the first degree, but it was done with a wicked and depraved heart, or with a cruel and wicked indifference to human life the law implies malice and makes the offense murder of the second degree.

You will observe from what we have said that there must be malice to constitute murder of either degree; it must be express in the first and implied from the facts proved in the second. It is difficult to explain clearly what the law means by malice. We may say, however, that it is a condition of the mind and heart at the time of the fatal act. Express malice, as we have said, is usually shown by something the prisoner did or said before the killing, such as lying in wait for, or threatening, the deceased, the manifestation of ill-will, spite, hatred, or revenge, the selection and use of a deadly weapon, or some other circumstance which indicates clearly that the prisoner had the intention to kill when he made the fatal attack. Implied malice must be shown by the character of the fatal act. If

it was an unlawful and .cruel act, voluntarily committed, with a wicked indifference to human life, and without adequate provocation, no matter how suddenly it was done, the law says it was done with implied malice. Where the killing was done with a deadly weapon, it is presumed to have been done maliciously, and the burden is on the accused, to show the contrary.

Manslaughter is where one person unlawfully kills another without malice in his mind or heart; for example, where one in a sudden fight, in the heat of blood, or in a transport of passion, inflicts a fatal wound, without time for reflection or for the passions to cool. This is because of the allowance the law mercifully makes for human frailty or infirmity under great and sudden provocation. But notwithstanding the provocation and passion, if the slayer has time, before inflicting the fatal blow, to exercise his reason and realize that the act he is about to commit is unlawful, it would not be manslaughter, but a murder of the first or second degree, according to the circumstances preceding or attending the act. If, however, the killing is done while the reason is unseated, and without time for reflection, the crime is reduced to manslaughter. And so, while murder proceeds from a wicked and depraved spirit, and is characterized by malice, manslaughter results, not from malice, but unpremeditated and unreflecting passion.

You will remember that State's witness, Johnson, testified that defendant, Emery, made a proposition to him about a week before the killing of Cline, that they take out some man who had money and rob him and knock or bump him off, or words to that effect. You will also remember that the Court, when admitting that testimony, stated that if, upon further thought and examination of the authorities, we became convinced the testimony was improperly admitted, it would be stricken out. We have concluded, however, that we cannot strike out such testimony, because the intended victim was not specifically named as a person other than Cline, but some man who had money. This was a general description of a class of men who had money and might include Cline.

Such testimony, according to the authorities, is admissible for what it may be worth in the judgment of the jury on the ground

that it shows a state of mind on the part of the defendant, and a malignant nature, in that he had the thought, intention and desire to commit a crime similar in character to that involved in the case on trial. It does not prove that the defendant was guilty of the crime charged, but is a circumstance which indicates that he was capable of committing the crime charged if he had the opportunity.

But we instruct you that nothing that Johnson testified Emery said to him about robbing a man and bumping him off can be considered by you unless you are convinced that there is other testimony in the case, independent of that given by Johnson, which tends to show that Emery was implicated in the killing of Cline. The testimony given by Johnson would not in itself warrant the conviction of Emery of any crime. And even if Johnson's testimony can be considered by you, because you think there is other and independent testimony, its weight and effect is for you to decide; and in determining its weight and effect, you may consider the time to which it relates and any other circumstance which, in your judgment, affects its credibility or value.

If the proposition made by Emery to Johnson was made some days before Cline was killed, it should not have the same weight and effect as if made very near the time. You should consider the time when it was made and the manner in which it was made in determining its probative value. We may say that such testimony has only such probative value as the jury think it is entitled to under all the circumstances of the case, and is to be considered in connection with other criminating evidence, if any there be.

In respect to the case against Emery, we further instruct you that if there is no evidence sufficient to connect him with the killing of Cline, that is, no evidence that he participated in the killing, or had knowledge before the killing that the purpose was to kill him, your verdict should be not guilty as to him, because anything he may have done after the killing in the way of suppressing or concealing the fact and otherwise aiding the actual offender in avoiding arrest, trial and punishment would not make him guilty under the present indictment. Whether he would, on account of

such wrong doing or misconduct, be guilty of some other charge, not embraced in the present indictment, we express no opinion. Or, to put this instruction in the language of the defendant, Emery's prayer, if you should believe that he, Emery, did not knowingly assist in the killing of the deceased, that is, if you should decide that Emery's first wrong doing occurred after the deceased had been shot, you cannot find him guilty of any crime under the indictment in this case. He might, in such case, be guilty of being an accessory after the fact, that is, after the killing, but you cannot find him guilty of that offense under the indictment in this case. He may be tried for such offense under a different indictment or information.

It is the duty of the Court to call your attention to a law of this state, of which counsel have spoken in their arguments, and which is in the following language:

"That in all cases where the punishment prescribed by the laws of the State of Delaware is death, if the jury shall at the time of rendering their verdict, recommend the defendant to the mercy of the court, the court may, if it seems proper to do so, impose the sentence of life imprisonment, instead of death."

This statute is plain upon its face and means, of course, what it says, but it does not mean that the jury shall, in every case, make such recommendation, but only where the evidence, in the judgment of the jury, warrants it. It does not mean that the jury shall make such recommendation from sympathy alone. The statute is, however, a humane provision of the law, and the jury are warranted in making the recommendation when they believe from the evidence, all things considered, that life imprisonment would meet the ends of justice and be a sufficient punishment for the crime.