BEATRICE L. COLTON, LILLIE E. CATOE, LUNETTE P. MARTIN, SILAS DAWKINS, and HERMAN COHEN, Administrator,

*vs.*

LILLIAN WADE.

*New Castle, April 9, 1953.*

*Louis L. Redding*, of Wilmington, for plaintiffs.

*H. Albert Young*, of Young & Wood, Wilmington, for defendant.

SEITZ, Chancellor: Plaintiffs seek to impress a constructive trust upon the home real estate owned by the defendant and her husband as tenants by the entirety until August 30, 1950 when the defendant shot and killed him. Plaintiffs are the administrator and the only heirs at law and next of kin of the deceased. In denying defendant's motions to dismiss and for summary judgment this court has ruled that such a trust will be impressed where one tenant by the entirety is in fact guilty of the felonious killing of the other tenant. See *Colton v. Wade*, 32 *Del.Ch.* 122, 80 *A.2d* 923. This court left for determination after trial the question as to the quantum of proof required, viz., beyond reasonable doubt or by the preponderance of the evidence, and the further question as to whether the "felonious" killing must amount to murder or whether a finding of some lesser wrongful act would be sufficient to grant relief.

Plaintiffs contend that the ordinary burden of proof rule in civil cases should be applied, viz., by the preponderance of the evidence. Defendant takes the position that even adopting the preponderance of the evidence rule, the plaintiffs have failed to establish a case. Since defendant does not argue for the criminal rule, I shall proceed on the assumption that plaintiffs need only establish their case by the preponderance of the evidence.

Defendant says that she must prevail because she proved legal justification by way of self defense. Neither counsel mentions it in his brief, but apparently the burden of establishing self defense is upon the defendant. See *State v. Stevenson*, 8 *W.W. Harr.* 105, 188 *A.* 750. I assume that the "preponderance of evidence" test also applies to this aspect of the case. I now proceed to consider the facts as I find them.

The defendant and the deceased, who were both about 63 years

of age when the shooting occurred, were married in 1934 although they lived together since 1915.

The testimony shows to my complete satisfaction that the deceased—a man of superior physical strength—abused his wife both physically and sexually for a long period of time prior to the shooting. For a period of three or four days prior to the fateful date of August 30 the deceased had subjected the defendant to violent and brutal physical treatment. Among other things he had knocked her down and broken her glasses.

Turning to the day of the shooting, it appears that the deceased came home from work early and commenced drinking beer and whisky. While his wife attempted to do work he repeatedly called her vile names and knocked her down. Defendant tried to get help to quiet him down. However, the two individuals who came apparently were of no help. They joined the deceased in the living room. The deceased called the defendant into the living room and there he constantly called her vile names and pulled her down on the couch. When she told him she had work to do he pushed her up by the back of the neck and told her to get out. The defendant finished some work and than sat down in the dining room. Immediately behind her on the sideboard lay her husband's pistol. It had been in the same location for some period of time. Defendant testified that as she sat in the dining room looking into the living room at the television the deceased saw her. He started to get up from the couch where he was sitting. They were about ten feet apart. He called her another vile name and said "I will cut your —— —— throat". Defendant further testified that the deceased reached into his pockets to take out, as she believed, the pocket knife which he usually carried with him. However, she did not see the knife and apparently it was not found on his effects after the killing.

I conclude that defendant's testimony as to this matter is entitled to belief. The testimony of the two companions of the deceased was either unconvincing or of little help. They were asleep or intoxicated. I believe that she picked up the gun from the sideboard and shot him in the reasonable belief that he was about to inflict great bodily harm upon her. The fact that she perhaps did

not act with the nice restraint one might demand of a person not subjected to the treatment she received, is no reason to deprive her of the benefit of the rule of reason. Especially is this so when the deceased was responsible for her almost demented condition. When we consider the physical condition of the deceased and the frail condition and mental state of the defendant, as well as the series of brutal beatings he had administered to her, his intoxicated condition and their close proximity, I feel that it is reasonable to conclude that defendant acted in self defense when she picked up the pistol and fired it.

Plaintiffs place great reliance upon the fact that defendant apparently did not tell the police after the shooting that she had shot her husband because she believed he intended to cut her throat or for any of the other reasons mentioned in her testimony. The statement to the police indicates that she told them she shot her husband because he called her "all those names". It is true that the defendant's statement to the police is sketchy. However, I believe that this statement given by an ignorant old lady shortly after the shooting does not reveal the full picture. For example, plaintiffs say the statement makes no mention of sexual abuses. Even so, I am fully satisfied that there were such abuses and in fact the trooper said the defendant mentioned them after she signed the statement. Nor does the statement mention the fact that the deceased during this four day "reign of terror" knocked the defendant down and broke her glasses. I have no doubt that he did, just as I believe he knocked her down with his fist on the day of the shooting. I believe that he did call her the vile names to which she testified and that he did threaten to cut her throat and that she had reasonable grounds to believe that he intended then and there to inflict great bodily harm under circumstances which justified her action.

Plaintiffs suggest that defendant should have retreated or called for help. Certainly calling for help would have been meaningless. Defendant, from my observation, was not a woman who could move with swiftness. Moreover, I doubt whether defendant, being equally entitled with the deceased to the possession of the house, was required to retreat from the home. Compare *State v. Phillips*, 8 *W.W.Harr.* 24, 187 *A.* 721.

Plaintiffs say her selection and use of a deadly weapon is a fact tending to indicate a formed design to kill. They cite *State v. Galvano*, 4 *W.W.Harr*. 409, 154 *A*. 461. Whether that aspect of the decision is correct in view of the Supreme Court decision in *Bantum v. State*, 85 *A.2d* 741, I need not decide. However, it is clear that there was no "selection" of a deadly weapon by this defendant in the sense that she had a choice of weapons.

It is, of course, true that equity should be vigilant to prevent a person from profiting by his own wrong. It is equally true, however, that the court in applying this salutary principle of public policy should not permit itself to be a vehicle for the commission of an injustice. While every court must naturally deplore the taking of human life, nevertheless, in fact and in law there are situations where life is taken without legal condemnation. Having heard the testimony, and with due allowance for self-interest, I am firmly persuaded that equity and justice are properly served here by a decision in the defendant's favor. The plaintiffs' complaint will therefore be dismissed.

In view of my conclusion it becomes unnecessary to decide whether the "felonious" killing must amount to murder or whether some lesser intentional killing without legal justification is sufficient. The effect of the criminal proceedings is not entirely clear from the pleadings. Moreover, no evidence concerning them was offered. In view of these circumstances and the further fact that plaintiffs' counsel explicitly claims that they are irrelevant I have not considered them in arriving at my conclusion.

Order on notice.