(February 11, 1897.)

## STATE v. LARKINS.

.[47 Pac. 945.]

CRIMINAL LAW—PRACTICE—BILL OF EXCEPTIONS.—Where the record shows that the prosecuting attorney provided by law was present at the time the bill of exceptions of the defendant in a criminal action was settled by the trial judge, and did not object to the settlement of such bill of exceptions, the objection that the record on appeal does not show that the defendant gave notice of the time that such bill of exceptions would be presented for settlement, will not be heard on appeal; but the appellate court will presume that such notice was given.

PRELIMINARY EXAMINATION—WAIVER OF.—A defendant is not prohibited by the constitution and laws of Idaho from waiving a preliminary examination, and if he does so, he cannot complain that he was permitted to do so.

DEFENDANT TESTIFYING MAY BE CROSS-EXAMINED.—The defendant in a criminal action cannot, under the constitution and laws of Idaho, be compelled to testify; and if he voluntarily takes the witness-

stand and testifies in his own behalf, he may be cross-examined about any facts testified to on direct examination, or connected therewith.  (See opinion on rehearing.)

INSANITY—BURDEN OF PROVING.—In a murder case, where the defense is insanity, the burden of proving such defense is on the defendant, but he is not required to establish his defense beyond a reasonable doubt.  In such case the vital question is, Was the defendant, at the time of the homicide, capable of knowing right from wrong?

DECLARATION OF DEFENDANT—WHEN ADMISSIBLE.—L., who was on trial for the murder of H. about three hours before the homicide, said to D. a witness for the state: "I would like to take you with me, but I have a dirty piece of business to do to-night." *Held,* that such declaration was admissible on the trial to show the *animus* of defendant toward deceased, and to show the character and intent of the acts of the defendant in committing the homicide.

EXCEPTION TO ORDER DENYING NEW TRIAL. — Affidavits disclosing newly discovered evidence in a criminal case, in order to be entitled to consideration by the appellate court on appeal, must appear in a bill of exceptions, duly settled, in conformity to the provisions of the Penal Code.  And an exception to an order denying a new trial must be saved in the same way.

(Syllabus by the court.)

APPEAL from District Court, Bingham County.

Hawley & Puckett, for Appellant.

The first point we desire to discuss is the power of defendant to waive an examination upon a charge of felony.  We claim that he cannot waive this right, and that the motion to quash the information should have been sustained.  Section 7576 of the Revised Statutes of Idaho expressly declares an examination cannot be waived.  (*Kalloch v. Superior Court,* 56 Cal. 229; *Ex parte Walsh,* 39 Cal. 705.)  "Malice," says Rice on Criminal Evidence, 442, "may be proven by direct evidence, such as prior threats; but in order to make a threatening remark admissible, it must be clearly shown that it was directed against the deceased.  Where the evidence shows a threatening remark has been made, it is not admissible until it is shown to whom the remark referred.  (*People v. Irwin,* 77 Cal. 494, 20 Pac. 56.)  The cross-examination of witness should be confined to matters which have been elicited from him on his direct examination.  (*People v. Miller,* 33

Cal. 99; *Landsberger· v. Gorham,* 5 Cal. 450; *People v. Jen-* *kins,* 56 Cal. 4; *Aitken v. Mendenhall,* 25 Cal. 212.) A defendant in a criminal prosecution who has become a witness in his own behalf cannot be cross-examined as to any facts or matters not testified to by him in his examination in chief. If the trial court permit a more extensive cross-examination the right secured to defendant by section 13, article 1 of· the constitution is violated. (*People v. O'Brien,* 66 Cal. 602, 6 Pac. 695.) To entitle witness to testify as to the mental conditions of a defendant. (Lawson's Expert and Opinion Evidence, rule 2, pp. 2, 466; *McRue v. Malloy,* 93 N. C. 154; *Baldwin v. State,* 12 Mo. 223; *Goodwin v. State,* 96 Ind. 550; *Grubbs v. State,* 117 Ind. 277, 20 N. E. 257; *Webb v. State,* 5 Tex. App. 596; *State v. Bryan,* 93 Mo. 273, 6 S. W. 102; *Moore v. Moore,* 67 Mo. 192; *Reed v. State,* 62 Miss. 405; *Craig v. Sutherland,* 148 Ill. 37, 35 N. E. 361; *Hardy v. Merrill,* 56 N. H. 227, 22 Am. Rep. 441; *Estate v. Brooks,* 54 Cal. 471; *State v. Lewis,* 20 Nev. 333, 22 Pac. 241; *Newcombe's Executors v. Newcomb,* 96 Ky. 120, 27 S. W. 997; *State v. Hurst,* 4 Idaho, 345, 39 Pac. 554.)

Robert E. McFarland, Attorney General, for the State.

Motion to quash the information, on the ground that the court had no jurisdiction to try the defendant, for the reason that the law had not been complied with in the preliminary examination of defendant, must be made before plea or trial, and all objections to indictment are waived. (*State v. Clark,* 4 Idaho, 7, 35 Pac. 710.) Section 8, page 186, Session Laws of 1890-91, expressly provides: "No information shall be filed against any person for any offense until such person shall have had a preliminary examination, unless such person shall waive his right to such examination." The other objection urged by appellant against the information is, that a probate judge has no jurisdiction to sit as an examining magistrate. Sections 7516 and 7565 of the Revised Statutes provide that magistrates shall examine all persons charged with a public offense. Section 7510 of the Revised Statutes defines a magistrate. By subdivision 2, of section 7511 of the Re-

vised Statutes, probate judges are made magistrates. The constitution has continued such laws in force. (Const., art. 5, secs. 21, 22, art. 21, sec. 2.) In *State v. Spencer,* 21 N. J. L. 196, it is held that, "in a prosecution for murder, the defense being insanity, and the fact of the killing being clearly established, it is the duty of the jury to convict where the evidence is equally balanced on the issue." (*Davis v. United States,* 160 U. S. 469, 16 Sup. Ct. Rep. 357; *People v. Walters,* 1 Idaho, 386; *Laffner v. State,* 10 Ohio St. 598; *People v. Coffman,* 24 Cal. 233; *People v. Myers,* 20 Cal. 518.) We maintain that on the trial of an indictment for murder, proof of previous threats is competent, although not directed against any particular person if they tend to show a malicious condition of defendant's mind. (*Harrison v. State,* 79 Ala. 29; *Jordan v. State,* 79 Ala. 9; *Anderson v. State,* 79 Ala. 5; *State v. Hoyt,* 47 Conn. 519, 36 Am. Rep. 89, and note; *Dixon v. State,* 13 Fla. 636; *State v. Grant,* 79 Mo. 113, 49 Am. Rep. 218; *State v. Hymer,* 15 Nev. 49; *Benedict v. State,* 14 Wis. 423; *Baldwin v. State,* 12 Mo. 223; *Goodwin v. State,* 96 Ind. 557; *Geroke v. State,* 13 Tex. 568.) It is an old rule of law too thoroughly established to require the citation of authorities in support thereof, that when a defendant in a criminal case takes the witness-stand in his own behalf, he may be subjected to the same rules that govern the cross-examination of others. (Laws 1889, sec. 1, p. 2; *Harper v. Lamping,* 33 Cal. 647; *Neal v. Neal,* 58 Cal. 287.) Affidavits used upon motion for a new trial should be disregarded and not considered on appeal, unless incorporated in a bill of exceptions properly authenticated, or otherwise properly identified, as having been used at the hearing of the motion. (*People v. Stonecifer,* 6 Cal. 405; *People v. Price,* 17 Cal. 310; *People v. Paddilla,* 42 Cal. 535.)

QUARLES, J.—Respondent moved to dismiss this appeal for the reason that the record contained no evidence of service of notice of appeal. Appellant suggested diminution of record, and, on leave given, filed a certified copy of the notice of appeal herein, from which it appears by the indorsement of the district attorney that the said notice was duly served. The motion to dismiss the appeal is therefore denied.

It is contended by the learned attorney general, on behalf of the state, that this court should not consider the appellant's bill of exceptions, because the record fails to show that notice of the time when the same would be presented to the district judge for settlement was served upon the adverse party, as required by section 7944 of the Revised Statutes. The order settling said bill of exceptions (called "statement" in the record) shows that the district attorney was present when the said bill of exceptions was settled. The object of the motion required by the statute is to furnish either party the opportunity to examine the bill of exceptions presented for settlement by the adverse party, and to give the opportunity to point out to the district judge any errors that might exist in the draft of the bill of exceptions proposed by the adverse party, and to give the opportunity to present amendments; thus insuring correctness in the bill of exceptions. But the object of the statute was attained in the case at bar, the district attorney having been present at the settlement of the bill of exceptions. Being present, it was his duty to object to the settlement of the bill of exceptions, if he had no notice; and, if the district judge should overrule his objection, he should then except, and save his exception by having it incorporated in a bill of exceptions; otherwise this court will not hear such objection, where the record shows that counsel for the adverse party was present when the bill of exceptions was settled. The presumption being in favor of the regularity of the proceedings of the court below, error will not be presumed, and must affirmatively appear by the record. The district attorney having been present at the settlement of defendant's bill of exceptions, and having failed to object to such settlement for want of notice thereof, the presumption is that such notice was given.

The defendant was arraigned in the district court on the sixteenth day of March; on the seventeenth day of March, the defendant entered the plea of not guilty; and on the nineteenth day of March, the defendant moved to quash the information on the ground that "no preliminary examination was had as required by law, or had at all," which motion was overruled, and the defendant duly excepted, and now assigns as error the action of the court below in overruling said motion. The

object of requiring a preliminary examination in a criminal case is, primarily, for the benefit of the accused, and to protect him from being restrained of his liberty, unless he consents thereto, until the state has made a *prima facie* case against him. This is a right given to everyone accused of crime, but this right may be waived by the accused, unless he is prohibited by law from doing so. There is nothing in article 1, section 8, of our constitution which prohibits the accused from waiving a preliminary examination. "No persons," in the language of the constitution, "shall be held to answer for any felony . . . . unless on presentment or indictment of a grand jury, or on information of the public prosecutor, after a commitment by a magistrate." In the act of March 13, 1891 (1st Sess. Acts, p. 186, sec. 8), it is provided: "No information shall be filed against any person for any offense until such person shall have had a preliminary examination therefor, as provided by law, before a justice of the peace, or other examining magistrate or officer, unless such person shall waive his right to such examination." This statute authorizes the defendant to waive a preliminary examination. To this effect is the decision of this court in *State v. Braithwaite,* 3 Idaho, 119, 27 Pac. 731. The defendant, being authorized to waive a preliminary examination, and having done so, cannot be heard to complain that he exercised such authority. The court below properly overruled the motion to quash the information on this ground, and for the further reason that the motion came too late, after the plea of the defendant had been entered, as this court held in *State v. Clark,* decided in February, 1894, and reported in 4 Idaho, 7, 35 Pac. 710.

Numerous exceptions were taken by the defendant to the action of the district court in admitting and refusing to admit evidence offered on the trial. We have carefully considered each of these exceptions, many of which are not of sufficient importance to require mention in this opinion, and those of sufficient importance we will now consider.

The homicide occurred about 5 o'clock A. M., December 25, 1895. The state introduced Frank De Kay as a witness, who testified, over the objections of the defendant, that the defendant was at the place of business of the witness on the night of

December 24, 1895, and left about 2 o'clock A. M. of that
night; that just before leaving, defendant said to the witness,
"I would like to take you with me, but I have a dirty piece of
business to do to-night." This was about three hours prior
to the homicide. The introduction of said evidence was ob-
jected to by the defendant on the ground that it was not con-
nected with, or shown to relate to, the deceased. According to
the testimony of George Colter and Nellie Vernon, who were
at the house of deceased during the night of the homicide, the
accused went to said house about 3 o'clock A. M., or about one
hour after leaving the saloon of the witness De Kay. We
think that this evidence was admissible. Being connected, as
it was, with the declarations and acts of the accused at the
house of deceased, so soon afterward, it tended to show the
*animus* on the part of the accused toward deceased; and, fur-
ther, the declaration of accused testified to by the witness De
Kay tended to show an abandoned, reckless, malicious spirit
on the part of the accused. This conclusion is supported by
the following authorities: *Jordan v. State,* 79 Ala. 9; *Ander-
son v. State,* 79 Ala. 5; *Harrison v. State,* 79 Ala. 29; *Dixon
v. State,* 13 Fla. 636; *State v. Grant,* 79 Mo. 113, 49 Am. Rep.
218; *State v. Hymer,* 15 Nev. 49; *Benedict v. State,* 14 Wis.
423. The supreme court of Missouri, in *State v. Grant, supra,*
say: "Under the ruling in *State v. Adams,* 76 Mo. 355, the
competency of threats made is not affected by their newness
or remoteness, and the authorities cited for the state show that
the threats made by defendant 'against policemen' were admis-
sible. Mr. Wills says: 'It is not uncommon with persons about
to engage in crime to utter menaces, or to make obscure and
mysterious allusion to purposes and intentions of revenge, or
to boast to others, whose standard of moral conduct is the
same as their own, of what they will do, or to give vent to
expressions of revengeful purposes, or of malignant satisfac-
tion at the anticipated occurrence of some serious mischief.
Such declarations or allusions are of great moment when clearly
connected by independent evidence with some subsequent crim-
inal action. The just effect of such language is to show the
existence of the disposition from which criminal actions pro-
ceed, to render it less improbable that a person proved to have

used it would commit the offense charged, and to explain the real motive and character of the action.' (Wills on Circumstantial Evidence, top p. 62.) In *Stewart's Case*, 19 How. St. Tr. 100, evidence was admitted that he had said that 'he hated all the name of Campbell.' And vague threats, not against any particular person, have often been admitted, and are competent evidence. (*Rex v. Barbot*, 18 How. St. Tr. 1251; *Benedict v. State*, 14 Wis. 423.) In a comparatively late case in this state a witness was allowed to testify that she heard the defendant say, a short time before the homicide, 'I'll kill him before day, G——d d——n him,' without calling any name. It was held admissible. (*State v. Guy*, 69 Mo. 430.)"

The witness James Kerr testified that about nine days before the homicide the accused went to the house of deceased, and in a conversation in presence of deceased, asked witness if "Red" (referring to a third party) had been there, to which witness replied in the negative, whereupon the accused said that "if he [defendant] caught him [Red] there, he [defendant] would kill the pair of them, and burn the house down, but what he would get them." The defendant objected to said evidence as being incompetent, irrelevant and immaterial, which objection was overruled by the court, to which ruling the defendant duly excepted, and the admission of said evidence is one of the errors assigned by the defendant. The record shows that the deceased was an unchaste woman; that defendant and deceased were on intimate terms; that the accused was jealous of the attentions of the person called "Red." For the reasons hereinbefore given, and for the purpose of showing a motive for the commission of the crime alleged, the evidence of the witness James Kerr, mentioned above, was competent, and properly admitted by the trial court.

The defendant testified as a witness in his own behalf, and was cross-examined on behalf of the state, over his objections, about matters relating to the issues in the action about which he had not testified on direct examination, and it is now assigned s error that the trial court permitted him to be so cross-examined. The learned counsel for the appellant contends that such cross-examination was in violation of the constitutional provision that "no person shall be compelled in any

criminal case to be a witness against himself." This provision of the constitution was the law of Idaho prior to the organization of our state government, having been adopted as part of our Penal Code, and is found in sections 7357 and 8143 of the Revised Statutes. Section 8141 of the Revised Statutes provides as follows: "The rules for determining the competency of witnesses in civil actions are applicable also to criminal actions and proceedings, except as otherwise provided in this code." Section 5956 makes all parties to an action competent witnesses. Section 6079 provides that "the opposite party may cross-examine the witness as to any facts material to the issues in the action, and in so doing may put leading questions." Under the provision of the constitution and statutes cited, the defendant in a criminal action cannot be compelled to testify in such action; but if he voluntarily takes the witness-stand, and testifies for himself, he does so subject to the rule that he may be cross-examined in regard to "any facts material to the issues in the action." The authorities cited by learned counsel for the defendant in support of the contention that the defendant in a criminal action cannot be cross-examined as to new matters are not in point. The cases of *People v. Miller,* 33 Cal. 99, *Landsberger v. Gorham,* 5 Cal. 450, and *Aitken v. Mendenhall,* 25 Cal. 212, merely relate to the time at which a witness may be asked in regard to new matter, and do not hold that he cannot be asked as to such new matter. And in *People v. O'Brien,* 66 Cal. 602, 6 Pac. 695, this question arose under a statute which in express terms limited the cross-examination to "matters about which he was examined in chief." A careful study of that case convinces us that it has no application to the case at bar. On the trial the defendant was asked by the district attorney about some matters about which he was not asked on direct examination, but these matters related to facts that were material to the issues in the action. The manner of cross-examination of a witness is a matter largely in the discretion of the trial court, and the record in the case at bar does not show that this discretion was abused.

One of the errors relied on by the defendant was the refusal of the lower court to permit the witness John Kerr to testify

as to his opinion of the sanity of the defendant. The witness Kerr was not an expert witness on the subject of insanity. His evidence showed that he had but a very limited acquaintance with the accused, and he was not, under the rule laid down by this court in the case of *State v. Hurst,* decided at the January term, 1895, and reported in 4 Idaho, 345, 39 Pac. 554, a competent witness on this question. In *State v. Hurst, supra,* this court held that nonexpert witnesses, who had known the defendant intimately for years, and up to the time of the homicide, were qualified to testify as to the sanity or insanity of the defendant. A nonexpert witness, to be competent to give his opinion as to the sanity or insanity of the defendant in a criminal action, should show, before being permitted to testify on such questions, that he has such intimate acquaintance with the defendant, as well as the necessary opportunity to observe the actions and demeanor of defendant, and has made such observations as would enable him to form an intelligent conclusion as to the state of mind of the defendant. A casual acquaintance, like the witness Kerr, could not be regarded as coming within this rule. The court did permit numerous nonexpert witnesses to testify as to their opinions of the sanity of the defendant, and, this being true, and the defendant having failed to show to the trial court what he expected to prove by said witness in response to said question, we cannot say that any error was committed in this regard.

The defendant excepted to the testimony of the witness Dr. Mitchell to the effect that said witness did not regard the defendant as mentally deranged at the time he (the said witness) treated the defendant, four hours after the homicide. Said witness, we think, showed himself to be competent to testify as to his opinion of the state of mind of the defendant at that time. The witness was an experienced physician, and was then treating a wound on the neck of the defendant, and then conversing with the defendant, and quite naturally observed the actions and conduct of the defendant. The court afterward refused to permit said witness Mitchell to testify as to his opinion as to the sanity of the defendant just preceding the homicide. No prejudicial error was committed in permitting or rejecting evidence of the witness Mitchell.

We have carefully examined the instructions given by the learned district judge on the trial, and think that the law of the case was fully and fairly given, with the exception of instruction No. 9, which was too favorable to the defendant; and that the instructions requested by the defendant which were refused, so far as they were correct, were covered fully by the instructions given by the court.

There appears in the record in this case divers affidavits setting forth newly discovered evidence, and it is insisted that on this ground the court below should have granted the defendant a new trial, and contended that the refusal to do so was reversible error. We should not inquire into this question, for the reason that there is nothing in the record whatever, as it came to this court, to show that said affidavits were used on the hearing of the motion for a new trial. If they were so used, it was the duty of the defendant to have shown, by bill of exceptions duly settled, that such affidavits were used in evidence, or offered, and their admission rejected, on the hearing of the motion for a new trial. Not having been identified in this manner, and the record failing to show that they were used on the hearing of said motion for new trial, we cannot presume that they were so used. But since the argument appellant has filed the affidavit of W. H. Puckett, which shows that the said affidavits were used on the hearing of the motion for new trial; but they cannot be identified in this manner. A careful study of sections 7940 to 7946, inclusive, of our Penal Code, leads to the inevitable conclusion that where, as in this case, a new trial is asked on the ground of newly discovered evidence, the affidavits showing such newly discovered evidence must be incorporated into a bill of exceptions, and settled by the trial judge. And it is also necessary to take and save in the same way an exception to an order overruling a motion for a new trial; and this was not done in the case at bar. But, owing to the fact that the life of the defendant is at stake, we have carefully examined the affidavits, though not identified as required by law, and carefully considered the matters therein contained, and are of the opinion that the showing made, if properly before this court for review, is not sufficient to have justified the trial judge in setting aside the verdict of the jury.

That which is claimed as newly discovered evidence, like a large portion of the evidence on the trial, tended principally to establish that the defendant had some peculiar eccentricities, and was at times absent-minded. We think that the preponderance of the evidence was sufficient to show that at the time of the homicide the defendant was capable of distinguishing between right and wrong. The question was one to be decided by the weight of the evidence. Mr. Greenleaf, in his work on Evidence (2 Greenleaf on Evidence, sec. 372), says: "In criminal cases, in order to absolve the party from guilt, a higher decree of insanity must be shown than would be sufficient to discharge him from the obligations of his contracts." The declaration of the defendant, made a short time prior to the homicide, "that he had a dirty piece of business to do tonight," doubtless convinced the jury, considered in connection with his subsequent movements, that at the time of the homicide the defendant was capable of distinguishing right from wrong. The evidence showed conclusively that the defendant committed the homicide charged. The only conflict in the evidence was as to the sanity of the defendant. The evidence upon this point was of a very unsatisfactory nature, owing to the meager knowledge of the majority of the witnesses as to the actions and conduct of the defendant. The burden of proving the insanity of the defendant was on the defendant, but he was not required to prove this issue beyond a reasonable doubt, but by a preponderance of evidence only. The trial court, in instruction No. 9, said to the jury that: "If, however, there should be a reasonable doubt as to the prisoner's sanity arise upon the evidence in the case, and upon nothing else, the jury should give the accused the benefit of that doubt." This instruction was erroneous, but not prejudicial, being too favorable to the defendant. In effect, it directed the jury to acquit if they entertained a reasonable doubt as to whether the defendant was sane or insane.

The evidence was sufficient to support the verdict, and, as no prejudicial error appears in the record, the order and judgment appealed from are affirmed.

Sullivan, C. J., and Huston, J., concur.

ON REHEARING.

(February 26, 1897.)

The appellant has filed a petition for rehearing, in which our attention is called to the act of January 10, 1889, which amends section 6079 of the Revised Statutes, cited in the original opinion, so as to make it read as follows: "Sec. 6079. The opposite party may cross-examine the witness as to any facts stated in his direct examination or connected therewith, and in so doing may put leading questions; but if he examine him as to other matters, such examination is to be subject to the same rules as a direct examination." (See Sess. Acts 15th Sess., p. 2.) This act was not cited in appellant's brief, nor in the argument of the case, and we inadvertently overlooked it in considering this case. The amendment to section 6079, cited above, changes the practice as to the manner of cross-examination of a witness, and by express terms limits such cross-examination to the facts stated in his direct examination, or connected therewith. Under this rule, the defendant in a criminal action, who has testified in his own behalf, can only be cross-examined by the state as to the facts stated on his direct examination, or connected therewith. We have again carefully examined that part of the record showing the cross-examination of the defendant in the case at bar, and are of the opinion that his entire cross-examination related to facts about which he testified in chief, or connected therewith, unless it be the two following questions, to wit: "Q. Did you ever have any trouble with Josie Hill? A. No trouble. I was acquainted with her. I can't remember when I last saw her. Q. When did you last see her? What was the conversation you had with her the last time you remember seeing her? A. I don't remember the conversation." The defendant objected to said two questions, and we think the objection should have been sustained; but these errors were harmless, as the answers of the defendant were in his favor, and he was not prejudiced thereby. Section 8236 of the Revised Statutes is as follows: "Neither a departure from the form or mode prescribed in this code in respect to any pleading or proceeding, nor an error

or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice in respect to a substantial right." This section was construed by this court in *State v. Reed,* reported in 3 Idaho, 754; 35 Pac. 706. Rehearing denied.

Sullivan, C. J., and Huston, J., concur.