(No. 5760. December 3, 1931.)

STATE, Respondent, v. KENNETH SMAILES, Appellant.

[5 Pac. (2d) 540.]

Leo McCarty and C. D. Livingstone, for Appellant.

Fred J. Babcock, Attorney General, and Z. Reed Millar, Assistant Attorney General, for Respondent.

VARIAN, J.—Appellant was convicted of assault with intent to commit rape under an information charging that "at

the County of Nez Perce in the State of Idaho, the aforesaid Kenneth Smailes then and there being committed the crime of rape who then and there did wilfully, intentionally, unlawfully and feloniously have sexual intercourse'' with prosecutrix, naming her, ''a female not the wife of said Kenneth Smailes,'' while the said prosecutrix was under the age of eighteen years. The salient facts necessary to an understanding of the case are substantially as follows:

Appellant lived with his mother in a double house at Lewiston, Idaho. On January 16, 1931, his mother left Lewiston on an early train and that evening the prosecutrix, aged sixteen years, and two other young women, called at the Smailes home. Appellant, and a companion, arrived at his home about 7 o'clock, the three women about 8 o'clock, and later two more men. Appellant left the house and went downtown for about an hour and then returned. He hid a jug of whiskey that was on the floor and then lay down and went to sleep. The testimony shows that when he left town to go home he was in a state of intoxication. There are two bedrooms opening off the kitchen and he went to sleep in the west bedroom. In front of the kitchen, and connected with it by a door, was the front room. All the guests were drinking and the prosecutrix and a male guest were dancing; the woman in bloomers and brassiere, *sans* other clothing.

The next morning the house was in wild disorder, with broken phonograph records, toilet paper, and other debris scattered through the rooms, including women's clothing. Some time during the early morning of the 17th all the guests left, except a man and a woman, besides prosecutrix, leaving these three and appellant alone in the house. Prosecutrix testified that while the other two persons remained in the front room appellant asked her into the left-hand bedroom where she had sexual intercourse with him, after which she went to sleep. Other facts will be referred to later. Appellant admits prosecutrix was in the house; that the other parties were there; but denies that there was any illicit intercourse with prosecutrix.

Appellant seasonably moved in arrest of judgment upon three grounds: That the information charged the crime of rape and defendant was convicted of assault with intent to commit rape; that the evidence fails to show assault with intent to commit rape; that there is a fatal variance between the allegations of the information and proof; and that the evidence discloses that defendant was not guilty of assault to commit rape. The overruling of the motion is assigned as error.

■ C. S., sec. 9019, limits the scope of a motion in arrest of judgment to defects that are grounds for demurrer under C. S., sec. 8870, which enumerates defects in the indictment or information or the fact that the grand jury did not have jurisdiction to inquire into the offense charged "by reason of its not being within the legal jurisdiction of the county." None of the grounds for demurrer being assigned, as a basis for the motion in arrest of judgment, the court properly overruled the motion. (*State v. Frank, ante,* p. 21, 1 Pac. (2d) 181; *State v. McClurg,* 50 Ida. 762, 300 Pac. 898.)

■ Over objection of appellant the prosecutrix was permitted to testify as to there being half a gallon of moonshine whiskey and some alcohol in appellant's house on the night in question. Appellant cross-examined the prosecuting witness upon this subject, and as to the condition of various persons present in regard to sobriety. The defendant also testified, on direct examination, that "a few drinks" were had by the prosecuting witness which "just about exhausted the gallon jug that was there." "Error in overruling an objection to the admission of evidence is harmless where the same matter sought to be elicited by the question is later received in evidence without objection." (*State v. Black,* 36 Ida. 27, 29, 208 Pac. 851; 17 C. J. 324; see *State v. McClurg, supra.*)

The chief of police was also asked, over objection, "Did you observe anything else in the line of intoxicating liquor in the house?" He answered in the negative and the error, if any, was harmless.

■ In the case of *State v. Alvord*, 47 Ida. 162, 272 Pac. 1010, it was held, in a prosecution for rape, that testimony that defendant offered intoxicating liquor to prosecutrix and another shortly before the commission of the alleged offense was admissible as tending to establish that defendant planned by its use to accomplish his purpose. In the instant case the jury were entitled to pass on the evidence of intoxicating liquor in defendant's house, where the crime is alleged to have taken place, as tending to establish a plan or design to have intercourse with the prosecuting witness.

■■ Remarks of the trial judge, during the *voir dire* examination of certain jurors, and of witnesses during the course of the trial, asserted to be prejudicial to appellant, are assigned as error. "Such statements and comments, not being any 'ruling, instruction, order, decision, judgment,' or 'judicial acts of the court or judge thereof,' are not deemed excepted to under Sess. Laws. 1927, chap. 24, p. 28. Appellant interposed no objection and did not except to any of the remarks of the trial judge complained of and we cannot, therefore, review these assignments of error." (*State v. Frank, supra; State v. Keyser*, 38 Ida. 57, 219 Pac. 775.) Having failed to except to the remarks complained of these assignments of error will not be reviewed.

Appellant contends that there is no evidence in the record to sustain the verdict of assault with intent to commit rape, and assigns as error the giving of instructions numbered 5, 6 and 7, and the refusal to give his proposed instructions to the effect that the jury should find defendant guilty of rape or acquit him.

■■ An information charging defendant with rape upon a female under the age of eighteen years, without alleging that the crime was committed with force and violence, is sufficient to sustain a verdict of assault with intent to commit rape (C. S., sec. 8997) since the latter offense is necessarily included in the crime of rape. (*State v. Garney*, 45 Ida. 768, 265 Pac. 668; *State v. Blythe*, 20 Utah, 378, 58 Pac. 1108 (involving the interpretation of statutes almost

identical with our C. S., secs. 8606 and 8997); *State v. Blair*, 209 Iowa, 229, 223 N. W. 554; *People v. Martin*, 208 Mich. 109, 175 N. W. 233.) There is competent evidence in the record to show that the completed crime of statutory rape was committed, and the jury had the power to convict appellant of the lesser offense, however illogical such action might seem, since the action of the jury cannot be regarded as injurious to appellant, but advantageous to him. (*State v. Garney, supra; State v. Blythe, supra; People v. Miller*, 96 Mich. 119, 55 N. W. 675; *Hinson v. State*, 29 Okl. Cr. 210, 232 Pac. 955; *State v. Blair, supra.*)

In the case at bar prosecutrix testified to the completed act of sexual intercourse with appellant, in a bedroom at appellant's home, after which she went to sleep there. When she awoke, some time later, it was daylight and appellant was standing on the floor in his underwear making an indecent demonstration toward her. She pushed him away and kicked him in the stomach, whereupon he assaulted her with his fists, striking and choking her. When he ceased she jumped out of the window and fled to a neighbor's house, clad in brassiere and bloomers, and was there taken in. Her physical condition shortly afterward is fully corroborated, by the testimony of the physician who was called to attend her, and by the police, to the effect that her body was scratched and bleeding, she was bruised on her legs and throat, which was badly swollen, her lips were swollen, and there was blood upon her clothing from the scratches. The doctor, and others who saw her shortly after she came to the neighbor's house, testified she was hysterical, etc. In addition to the evidence of the completed crime of rape there is sufficient evidence of the later assault to sustain the verdict.

Appellant complains of the giving of the court's instruction No. 9, that "no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition." The instruction is in the language of the first sentence of C. S., sec. 8089, which reads as follows:

"No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act."

It must be conceded that the instruction was proper upon the theory of the completed crime of rape. As intent enters into the crime for which appellant was convicted, he was entitled to an instruction covering the balance of the statute had he asked for it. He made no request for such an instruction and under the well-settled rule in this state a failure to give an instruction is not error unless such instruction is requested by the defendant. (*State v. Jurko,* 42 Ida. 319, 245 Pac. 685; *State v. Roby,* 43 Ida. 724, 254 Pac. 210; *State v. Dunn,* 44 Ida. 636, 258 Pac. 553; see, 16 C. J. 976.)

Dr. Lyle, a witness called for the state, testified that he called at the Clarke home on the morning of January 17, 1931, to attend the prosecuting witness, and sent her home to her mother. At the request of the prosecuting attorney he made an examination of her vagina for the purpose of ascertaining whether she had recently indulged in sexual intercourse. He found evidence of the male spermatozoa and made a "smear" from the vagina, which Mrs. Kauffman, a laboratory technician, afterward determined contained live spermatozoa. She could not tell the age thereof. Dr. Lyle testified on cross-examination that it is possible the male spermatozoa might remain in the female for "some time"; that it would live there for the length of time it might stay in. Before the state rested this witness was recalled for further cross-examination and testified:

Q. "How long, in your opinion, would the spermatozoa remain there, and you be able to get such a test as you got?"

A. "Only a few hours."

Q. "It wouldn't remain there two or three days?"

A. "I hardly think so."

He based his opinion on the amount of semen immediately in view on opening the vagina with a speculum.

Q. "Was that close to the exterior part?"

A. "Well, it was lying up in the vagina; and if she had been—if that had been in there any length of time and she had been on her feet, why, in the course of a few hours—that is, two or three hours, that would naturally work out—the amount of semen that was left there."

Q. "And after two or three days would there be any remain whatever?"

A. "Well, I couldn't say as to that, whether there would be any remain at all; but at that time there was quite a mass of semen lying right in the vagina, and she had been off her feet most of the time. That was my opinion on the case."

Q. "You don't think it could remain a day and find the amount that you found there?"

A. "I don't think so, if she had been walking around any."

The testimony further shows that prosecuting witness was toe dancing and jumping around during the course of the evening.

Just before the state rested appellant recalled the prosecuting witness for further cross-examination and asked her regarding specific acts of sexual intercourse had with other men. Objection that it was not proper cross-examination was sustained. The rule is that where, in corroboration of the testimony of prosecutrix, the state introduces medical testimony tending to show that an act of sexual intercourse has been committed with her, the defendant may introduce evidence of specific acts of sexual intercourse with others to negative the medical expert testimony as pointing to the accused. (*State v. Pettit*, 33 Ida. 326, 193 Pac. 1015.)

It is conceded that appellant may offer testimony tending to show specific acts of sexual intercourse by prosecutrix

with other persons than the defendant, if within the time limitations disclosed by the medical testimony and the other facts in evidence, to negative the inference from the medical testimony that accused committed the act. But appellant will not generally be permitted to cross-examine a witness upon matters not stated on direct examination, or connected therewith. (C. S., sec. 8034; *State v. Larkins* (on rehearing), 5 Ida. 200, 212, 47 Pac. 945; *State v. Gruber,* 19 Ida. 692, 704, 115 Pac. 1; *State v. Anthony,* 6 Ida. 383, 55 Pac. 884.) Nor is it permissible for the defendant to open his case and present evidence to support it by cross-examination of the state's witnesses as to matters not brought out on direct examination. (*Hopkins v. Utah Northern Ry.,* 2 Ida. 300, 303, 13 Pac. 343; *Poston v. State,* 83 Neb. 240, 119 N. W. 520; *State v. Smith,* 103 Kan. 148, 174 Pac. 551; *Eacock v. State,* 169 Ind. 488, 82 N. E. 1039; *State v. Murphy,* 87 N. J. L. 515, 94 Atl. 640; *Kennedy v. Supnick,* 82 Okl. 208, 28 A. L. R. 1520, 200 Pac. 151; Underhill's Criminal Evidence, 3d ed., 501; 2 Nichols' Applied Evidence, 1565, sec. 226.)

The fourth specification of error relates to a question asked the prosecuting witness on direct examination. The question was proper but objectionable as being leading. After it was answered appellant objected to the question as leading and suggestive without moving to strike the answer. Overruling the objection was not error.

There is no merit in the contention that appellant was unduly restricted in his cross-examination of the prosecutrix as to a conversation with Maxine Arnold. The salient fact was an alleged statement by prosecutrix to Maxine Arnold to the effect that she had not had sexual intercourse with appellant on the night in question. This she was asked, and denied.

On direct examination appellant stated he had been convicted and imprisoned in the Idaho penitentiary for the crime of forgery. Over objection he was permitted to testify, on cross-examination, when he was released from the penitentiary. This assignment is not argued or briefed. The court

did not err as the cross-examination was within the rule of C. S., sec. 8034.

On direct examination defense witness Laverne Lambert was asked if she made a certain statement in a conversation with the prosecuting attorney. She answered evasively that she did not remember. Appellant urges that she did not deny the conversation and so it could not be proven on rebuttal. It was not error to permit proof of the conversation in rebuttal. The same witness testified that her answers were not freely made in said conversation, and that she was practically coerced to answer as she did. The rebuttal was by a witness present, who stated that Miss Lambert's testimony was given freely and in detail. The court did not abuse its discretion in receiving the rebuttal testimony complained of. (See *State v. Mushrow*, 32 Ida. 562, 185 Pac. 1075.)

There was no error in refusing the following offer of proof while the witness Laverne Lambert was on the stand:

" .... We intend to prove by the witness now on the stand that the prosecuting witness told her, the day that this party took place, on the 16th of January, that she was out the night before to a dance with a man by the name of Leo Ratsaw, and the prosecuting witness told her that this Ratsaw took her out in a car and that they were out until a late hour in the morning; that they went to Clarkston and they got some wine and she got pretty drunk."

No foundation was laid for impeachment. (*State v. Farmer*, 34 Ida. 370, 373, 201 Pac. 33.) Furthermore, the offered testimony went no farther than an offer to prove prosecutrix had an opportunity to commit another illicit act. (*State v. Farmer, supra; State v. Henderson*, 19 Ida. 524, 114 Pac. 30.) The testimony tending to show sexual intercourse by prosecutrix with one Ratsaw, in a room in a house at Clarkston, Washington, "about a week before" the commission of the offense involved in this action, was properly stricken as relating to a matter too remote under the medical testimony in evidence.

■ The defense witness Viola Christenson testified on direct examination that she saw prosecutrix in a room in the Bollinger Hotel at Lewiston about two days before date of the offense. This answer was stricken and appellant offered to prove that witness saw the prosecutrix in a room in said hotel, with one Bennie Cottrell, about two days before the date of the offense, "and the girl told her that she stayed there all night." This offer was also properly rejected, under the state of the evidence, because the facts were too remote to have any bearing upon the offense in the present case.

■ H. B. Clarke testified that after prosecutrix reached the Clarke home she called for a certain man. On objection that it was immaterial and incompetent he was not permitted to name the person she called for. The jury were excused and counsel told the court the name of the person and the court adhered to his ruling. We find no error since it does not appear that the matter sought to be elicited from this witness was material.

■ Dr. Stockslager, a witness called by appellant, was, on direct examination, asked as follows:

Q. "Doctor, in your opinion as a physician, how long a time would elapse when you could get a sufficient amount of spermatozoa from a woman to make a microscopical examination, by a smear,—after she had had sexual intercourse with a man?"

In the absence of the jury the witness answered he did not know how to answer the question without more facts. "Live spermatozoa," was added to the question and he answered, "It would depend upon circumstances after the intercourse." Without restating the question, the doctor was asked if he meant by that her being on her feet or not, and he answered that that was one thing to be taken into consideration. Without restating his question, counsel proceeded to enumerate the acts of prosecutrix in jumping out of a window and going to the Clarke home, after the alleged rape. The court properly sustained an objection to the last question, since appellant was seeking to lay a foundation in order to show

that the conditions found by Dr. Lyle were due to intercourse had prior to the day on which the offense here charged was committed. There was no intimation, no offer of proof, or any claim made by counsel, that appellant could prove sexual intercourse with the prosecutrix by anyone after the alleged intercourse with appellant. The question wholly ignores the acts and doings of the prosecutrix prior to the alleged rape. As framed the question did not state facts germane to the matter to be determined. (See 16 C. J. 755; *State v. Garrison,* 59 Or. 440, 117 Pac. 657, 658.)

It will be observed that most of the rulings of the court on the admission of testimony relate to matters attempting to show the crime of rape was not committed by appellant. He was convicted of assault with intent to commit rape and there is ample evidence, aside from that tending to show completed rape, to sustain the verdict.

Judgment affirmed.

Lee, C. J., and Budge, Givens and McNaughton, JJ., concur.