(No. 6045. May 31, 1934.)

EDWARD N. GIRANEY, Jr., by His Guardian Ad Litem, LYON HEALY, Respondent, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant.

[33 Pac. (2d) 359.]

Geo. H. Smith and H. B. Thompson for Appellant.

Walter Anderson, **J. H.** Peterson and Milton Zener, for Respondent.

GIVENS, J.—Respondent, a minor employed by appellant, September 22, 1932, in assisting to lift a section motor-car from the main line track was struck by another of appellant's motor-cars, allegedly breaking his leg, and severely injuring his back.

In this action prosecuted under the Federal Employers' Liability Law (U. S. C. A., title 45, chap. 2) by his guardian, he recovered a verdict and judgment for $10,000.

Appellant denied the injury and negligence, and set up as affirmative defenses: Contributory negligence, that respondent had not promptly reported the accident, sought and secured medical assistance, and that if medical assistance had been secured immediately, his injuries and damage, if any, would and could have been ameliorated and readily and completely remedied.

There was a sharp conflict in the evidence. The testimony on behalf of respondent being to the effect, that he was pinned between the two motor-cars at about the hips and dragged for some distance. Opposed to this, other former employees of the appellant, present at the time, testified that respondent was not so pinned, but jumped up on the

car he was lifting and was only jolted and jarred and not pinned between the two cars or dragged.

The sufficiency of the evidence to sustain the verdict or the amount thereof is not questioned.

Only the admission and rejection of evidence, instructions given and refused, and remarks of the court are assigned as errors.

 Respondent in support of his case testified in chief as to the extent, severity and continuance of his injury, suffering and physical incapacity. On cross-examination he was interrogated as follows:

"Q. You knew at the time of the accident, that the railroad had a medical staff, a staff of doctors and surgeons, didn't you know that, that they had a staff of doctors and surgeons to care for all of their injured employees?

"General Peterson: That is objected to as being wholly immaterial.

"Mr. Thompson: Well, I will submit it to the court.

"General Peterson: And so shall I submit it.

"The Court: I shall have to sustain the objection.

"Q. So that I may conclude my record on that point to my satisfaction, I will ask this question. Did you not know at the time that the railroad company would furnish you with medical and surgical attention merely for the asking?

"General Peterson: We object to that as being entirely incompetent, irrelevant and immaterial.

"The Court: The objection is sustained.

"Q. Did you know that they had a local surgeon at Rupert, which is about twenty miles from Kamima, and a staff of surgeons at Pocatello, whose business it was to care for employees who have been injured in the service?

"General Peterson: I dislike very much to be objecting all the time and I don't want to be placed in the position of objecting constantly, but this question has been asked three times and I shall object again as being incompetent, irrelevant and immaterial.

"The Court: The objection is sustained.

"Mr. Thompson: May we have an exception?

"The Court: Yes, I think the statute allows all of your exceptions, Mr. Thompson.

"Q. From the point of the injury, the motor car set-off, in to Kamima, you rode with your father, the two of you were together, were you not?

"A. He was sitting on my left-hand side. I was sitting there, and he was sitting on the left-hand side.

"Q. You knew that it was customary, did you not, to report to the railroad company, accidents to any employees, that is, injuries?

"General Peterson: For whom to report it, Mr. Thompson?

"Mr. Thompson: For the employee, himself, if he was injured.

"General Peterson: We object to that as being immaterial.

"The Court: The objection is sustained."

Respondent urges that the questions presaged appellant's affirmative defenses, and were therefore properly excluded at the time under the rule announced in *State v. Smailes*, 51 Ida. 321, 5 Pac. (2d) 540.

The objections made were that the proffered questions elicited testimony "wholly immaterial," "entirely incompetent, irrelevant and immaterial"; respondent in his brief argues that these objections, "incompetent, irrelevant and immaterial," "hearsay," "no proper foundation laid and not binding on the defendant and not rebuttal," were then interposed by appellant at another stage of the trial, too general and not sufficiently explicit to be reviewed, citing 6 Jones Commentaries on Evidence, 2d ed., 4986–4987. If such contention be sound then certainly respondent's objections were too general to have been sustained. The objections did not specify that the questions sought testimony prematurely, or out of order, or in support of an affirmative defense, or not proper cross-examination, and since sustained as wholly immaterial, if not wholly immaterial, the ruling was erroneous.

Conceding that such testimony as bearing on an affirmative defense was not then admissible, if admissible for an-

other legitimate purpose it should not have been rejected. (1 Wigmore on Evidence, 2d ed., p. 158, sec. 13; 2 Jones Commentaries on Evidence, 2d ed., p. 1358, sec. 727; 1 Chamberlayne, The Modern Law of Evidence, sec. 173.)

" . . . . the admissibility of such evidence as that under discussion, admissible because competent as to one point, is not destroyed by its incompetency as to other points which it yet logically tends to prove." (*Adkins v. Brett*, 184 Cal. 252, 193 Pac. 251, 253; *Wagner v. Atchison, T. & S. F. Ry. Co.*, 210 Cal. 526, 292 Pac. 645.)

"Until 1827, the orthodox rule seems to have been almost universally followed. But in a Pennsylvania case decided in that year it was said that a witness might not be cross examined to facts which are wholly foreign to what he had already testified. Subsequently the broad rule was laid down by the United States Supreme Court, that a party has no right to cross examine any witness except as to facts and circumstances connected with the matters stated in his direct examination. If he wishes to examine him as to other matters, he must do so by making the witness his own, and calling him as such in the subsequent progress of the cause. This rule, commonly known as the 'American Rule,' has now become firmly established in the federal courts and in the courts of most jurisdictions of this country. The reasons usually designed for its adoption are that it prevents a confusion of the cases made out by the opposing witnesses, and places the parties on an equal footing, preventing either from having an unfair advantage over the other in the matter of cross-examination. Under this rule a witness may not be asked any question on cross-examination which does not tend to rebut, impeach, modify, or explain any of his testimony. Of course it is error for the trial court to refuse to permit the cross-examination of a witness to extend to all matters germane to the direct examination, as such a cross-examination is a matter of absolute right and is not a mere privilege. In those jurisdictions where the American rule is followed, the courts frequently say, in effect, that a party to a cause may not introduce a defense by cross-examining his adversary's wit-

ness as to matters not germane to the direct examination, but if a question is within the scope of the direct examination it is not objectionable on cross-examination because it tends to establish a defense to the action." (28 R. C. L., p. 604, sec. 194.)

In his testimony in chief, respondent had detailed at length his injuries and suffering. It was competent, material and relevant for appellant on cross-examination to attempt to contradict or weaken this by showing that he had not been so seriously injured; and his failure to see a physician, as he admitted he had not done, when, as appellant sought to bring out on such cross-examination, he knew the company physicians were available for the asking, may have had a logical tendency to lead to the legitimate inference that he was not as badly hurt as he claimed and the physicians would have so ascertained. Of course, respondent could have taken the position that in a way such course would have put him in the hands of hostile parties, countered in turn by the argument that the company would not want to be further liable for improper care or unskilful treatment. (*O'Quinn v. Alston*, 213 Ala. 346, 104 So. 653, 39 A. L. R. 1263.) It is thus apparent the entire matter should have gone to the jury. (17 C. J. 1036; *McFadden v. Santa Ana, O. & T. St. Ry. Co.*, 87 Cal. 464, 25 Pac. 681, 11 L. R. A. 252; *Cupples v. Zupan*, 35 Ida. 458, 207 Pac. 328.)

In a similar situation the language of the court in *Chicago, R. I. & P. Ry. Co. v. Hill*, 35 Okl. 540, 129 Pac. 13, 16, 43 L. R. A., N. S., 622, is pertinent:

"The purpose of cross-examination amongst other things, is to test the truthfulness of the witness, and, if he is the plaintiff, his good faith, the righteousness of his case. In an action for personal injuries, it is manifest that the jurors are entitled to all the information which can be produced, not only upon the cause of the injuries, but also the extent of the injuries, in order to determine whether the plaintiff should recover at all, and, if so, the amount of his recovery. Would an examination of the injuries by competent and disinterested physicians, appointed by the court and acting

under his supervision, aid the jury in ascertaining these facts? Manifestly it would, and the jury would doubtlessly rely more upon the testimony of such a physician than they would upon one employed as an expert by one of the interested parties. Would the plaintiff be prejudiced by such an examination? Manifestly he would not, if his case was a *bona fide* one; and if it was not *bona fide* the law should not exert itself to assist him in concealing the bad faith.''

The rulings were prejudicial because appellant was not advised that it should later attempt or might be permitted to put the matter sought before the jury.

''Considering the issues as made by the pleadings in this case, we must hold that this evidence is properly admissible as evidence in chief rather than rebuttal testimony. The objection, however, was not upon the ground that it was not properly rebuttal, but upon the ground that it was immaterial. Had the objection been made upon the former ground appellant then would have probably requested that the testimony be admitted as evidence in chief, and the court would no doubt have granted the request. The objection having been sustained upon the ground of its materiality, we must hold that the court committed error in excluding the offered testimony.'' (*Motor Mill Co. v. Wilson*, 128 Wash. 592, 223 Pac. 1041), and the rejection was prejudicial error.

''Nevertheless it is clear enough that the evidence, competent for the purpose of showing the wife's feelings, is not rendered incompetent by the fact that it also tends to prove other material matters, to prove which it is not competent. The rule upon his point, which is one of wellnigh everyday application in actual trial, is thus stated by Wigmore (vol. 1, p. 42):

'' 'In other words when an evidentiary fact is offered for one purpose, and becomes admissible by satisfying all the rules applicable to it in that capacity, it is not inadmissible · because it does not satisfy the rules applicable to it in some other capacity, and because the jury might improperly con-

sider it in the latter capacity. This doctrine, although involving certain risks, is indispensable as a practical rule.'

"*Cripe v. Cripe, supra,* (170 Cal. 91, 148 Pac. 520), is an illustration of this. A father was sued by the wife of his son for the alienation from her of the son, and at the trial the following question was asked of the father as a witness:

" 'After the marriage of your son and daughter and before Dolly (the son's wife) left the ranch in Huasua in August, 1911, did your son ever tell you that Dolly drank to such an extent that he could not control her, or did he ever tell you during that time that she abused him so bad that he could not live with her?'

"It is plain that as to the facts that the wife drank to excess and abused her husband, so that he could not live with her, the evidence was hearsay, was not within any exception to the hearsay rule, and was wholly incompetent and at the same time those facts were material to the case, and, if true, very detrimental to the cause of the wife, so that the introduction of the evidence would be very prejudicial to her as to facts which the evidence was wholly incompetent to prove. Nevertheless the question was held to be proper, and the refusal of the trial court to permit it to be answered reversible error, on the ground that the testimony which it called for was competent to show that state of the son's feelings." (*Adkins v. Brett, supra.*)

Appellant also assigns as error the instruction given by the court in his ruling that the burden of proving the affirmative defenses was on appellant and that the burden was on the respondent to prove, "in the first instance negligence of the defendant."

The affirmative defenses, though indirectly bearing upon the question of any injury, the burden thereof resting on respondent, were chiefly directed to the mitigation of damages, and the burden of proof in connection therewith was properly placed upon appellant. (17 C. J. 1025; *International Correspondence School v. Crabtree,* 162 Tenn. 70, 34 S. W. (2d) 447, 449, 78 A. L. R. 330; *Branon v. Ellbee Pictures Corp.,* 42 Ga. App. 293, 155 S. E. 923; *Standard*

*Growers' Exchange v. Hoops,* 22 Fed. (2d) 599; *Federal Reserve Bank of Dallas v. Upton,* 34 N. M. 509, 285 Pac. 494; *Hoehne Ditch Co. v. John Flood Ditch Co.,* 76 Colo. 500, 233 Pac. 167; *Bader v. Mills & Baker Co.,* 28 Wyo. 191, 201 Pac. 1012.)

■ The court did not err in refusing to give requested instruction No. 7,

"You are instructed that the plaintiff was not excused from consulting a physician because he was denied an order on the defendant company's doctor or medical staff if you so find, but in the event that he did request such an order and was refused it, then it was his duty to promptly employ another physician. And it is no excuse to say that the plaintiff individually did not have funds with which to employ a physician, for it was the duty of his parents in such event to employ a physician with their own funds.", because the appropriate gist of the requested instruction was sufficiently covered in the instruction given by the court, as follows:

"You are instructed Gentlemen of the jury that it was the duty of the plaintiff, and his natural guardians, to-wit, his Father and Mother, to use ordinary care, judgment and diligence in securing medical and surgical aid after he received the injuries complained of, if any he received; and if you find from the evidence that after he received such injuries, if any he did receive, he, or his natural guardians, failed to use such ordinary care, and diligence in procuring timely medical and surgical aid; and if you further find from the evidence that by reason of such failure his condition is now different and worse than it would have been if he had used such ordinary care, judgment and diligence in the premises, then, if you find for the plaintiff, you should take this into account in making up your verdict, and should not allow plaintiff any damages for ailments and diseases, if any, that may have resulted from such failure.

"In this connection you are advised that the word diligence as in these instructions referred to means the use of reasonable care or the doing of what an ordinarily prudent person would have done under the same circumstances."

■ Appellant further assigns as error the overruling of objections to questions asked of some of the witnesses, as to their being discharged by appellant after the accident, and questions as to why they did not notify the company or call a physician.

These questions were within the legitimate scope of cross-examination to show bias, prejudice, interest, or lack of interest, of the witnesses. (40 Cyc. 2570 and 2670.)

The cases cited by appellant are not sufficiently comparable to be controlling, and those authorities which we have been able to find nearest in point are, *Pyne v. Broadway & Seventh Ave. R. Co.*, 19 N. Y. Supp. 217, 219, where the following situation was approved by the court:

"On cross-examination the plaintiff was properly allowed to ask the witness as to whether he had stated that the street railroad company would blacklist him if he gave his testimony according to the facts; it tended to show his bias and affect his credibility. It is one of the objects of cross-examination to discover the motives in the mind and the prejudice of the witness, for the purpose of reducing the effect which might otherwise be given to the evidence."

In *Missouri, K. & T. Ry. Co. of Texas v. Smith*, 31 Tex. Civ. App. 332, 72 S. W. 418, the court ruled as follows:

"It was also proper to ask the witness Berry (witness for the defendant), on cross-examination, whether or not there was a general rule of the defendant company that employés who violate the rules and are negligent are discharged, and that they have to get out, or do their best as witnesses for the company. The witness in answering this question, stated that an employé is not discharged every time, and that they are not discharged unless negligence is shown. The objection urged to the question and the evidence in answer to it, is that it was immaterial and irrelevant, and calculated to prejudice the defendant's case in the minds of the jury, and that there was no proof of such rule or custom. The question asked was proper."

■ Respondent's father over appellant's objection, that the conversation was hearsay and that the proper foundation had not been laid, was permitted to state a conversation he

had with Dr. Young, concerning the duration of the respondent's injuries, during an examination made, apparently in February, by the doctor.

Respondent urges that the conversation was admissible because Dr. Young was one of appellant's physicians. It is true that he was one of appellant's physicians, but it is not shown that he was acting as such at the time, therefore the objection should have been sustained.

Appellant also urges as error several interjected remarks by the court, not rulings; suffice it to say that these remarks were not objected to, hence, there is nothing before us in this connection upon which to rule. (*State v. Keyser,* 38 Ida. 57, 219 Pac. 775; *State v. Smailes, supra; Estate of Brown,* 52 Ida. 286, 299, 15 Pac. (2d) 604.)

Because of the errors indicated the judgment is reversed and the cause remanded, with instructions to grant a new trial.

Costs awarded to appellant.

Budge, C. J., and Wernette, J., concur.

MORGAN, J., Dissenting.—In order that the principles of law governing this case may be properly applied, the following restatement of the issues of fact tried is necessary.

Respondent, a minor, acting by Lyon Healy, his guardian *ad litem,* commenced this action against appellant for damages sustained by him when he was a railroad section laborer in its employ. It is alleged in the complaint that while he was standing between the rails of the track, ready to assist in removing therefrom the motor-car used by the section crew, a motor-car driven by his father, who was a signal maintainer employed by appellant, and who was in the performance of his duties to it, ran against respondent, pinned him against the car used by the section crew and dragged him along the track, injuring his left leg and the region of his hips and back, causing him to suffer great pain and permanently crippling and disabling him. It is further alleged that respondent and appellant were en-

gaged in interstate commerce at the time of the accident. The action is brought pursuant to the Federal Employers' Liability Law (U. S. C. A., title 45, chap. 2).

The minority of respondent, appointment of his guardian *ad litem,* authorization to commence the action, the corporate existence of appellant, and that it was a common carrier engaged in the operation of a railway in interstate commerce, were admitted in the answer, as was also the fact that respondent was engaged in work on the section as an interstate employee of appellant, within the meaning of U. S. C. A., title 45, chap. 2. Appellant denied each and every allegation in the complaint not admitted as aforesaid.

For a second, separate and distinct defense appellant alleged contributory negligence of respondent, and that he would not have been injured except for such negligence. For a third, separate and distinct defense it alleged that if respondent was injured as stated in the complaint, his injuries were of such limited nature and extent that if he had promptly reported them to his employer and requested and submitted to medical and surgical services and hospitalization, which his employer would have furnished him without cost, he would not have suffered any serious or permanent injury, but that he and his father, who was his natural guardian, concealed from and did not report to the operating and executive officers and physicians and surgeons of appellant that respondent had suffered personal injury, and that he refrained from consulting a competent physician or surgeon when, if suffering from any of the injuries of which he complained, he and his father well knew he should have done so, and that whatever aggravation or injuries or damages he sustained in excess of a limited incapacity for a period of a few weeks, were directly caused and contributed to by him and his father and that appellant was not liable therefor. The allegations in the answer of matter constituting affirmative defenses are deemed to be denied. (I. C. A., sec. 5–812.)

The trial resulted in a verdict and judgment for respondent, from which this appeal has been taken.

Appellant assigns as error rulings sustaining objections to questions propounded to respondent on cross-examination the purpose of which was to show he knew, at the time of the accident, appellant had a staff of physicians and surgeons to care for its injured employees and that their services were available to him without cost. The court tried the case on the theory that the second and third separate defenses, stated in the answer, were affirmative defenses and that the burden was on appellant to prove the allegations thereof. Assignments of error now under consideration present for review rulings based on that theory.

As will be seen by an examination of note 75 appended to U. S. C. A., title 45, chap. 2, sec. 53, commencing on page 410, the federal rule applicable to contributory negligence, like I. C. A., sec. 5–816, places the burden of proof thereof on the defendant. Contributory negligence, pleaded in defendant's second separate defense, and failure of respondent to promptly report his injuries and to secure medical and surgical services and hospitalization, pleaded in his third separate defense, which failure is alleged to have aggravated his injuries, are affirmative defenses intended to reduce the amount of his recovery, and the burden of establishing the facts set forth therein was properly placed on appellant.

In *Hopkins v. Utah Northern Ry. Co.*, 2 Ida. 300, 13 Pac. 343, the court had under consideration the question of order of proof of the affirmative defense of contributory negligence and said:

"We see no error in the ruling of the trial court in excluding the evidence sought to be adduced by the defendant by cross-examination of plaintiff's witnesses as tending to show contributory negligence on the part of plaintiff's servant. It is a general rule that the defendant should not open his case by a cross-examination of plaintiff's witness; but the application of this rule must neces-

sarily rest largely in the sound discretion of the trial court." (See, also, *State v. Smailes,* 51 Ida. 321, 5 Pac. (2d) 540; *Kennedy v. Supnick,* 82 Okl. 208, 200 Pac. 151, 28 A. L. R. 1520.)

In the case last above cited this rule is stated:

"It is fundamental that the defendant should not be permitted to make his defense by the cross-examination of plaintiff or plaintiff's witness on matters not touched upon in the examination in chief."

Counsel for appellant correctly invoked the law, applicable to the order of proof, when respondent was on the witness-stand in support of the allegations of his complaint and the following occurred on redirect examination:

"Q. Did you, at any time, after the accident make application to the section boss to see a doctor, for an order to see a doctor?

"A. Yes, sir.

"Q. About when was that, with reference to when the accident occurred?

"A. About a week after I got hurt.

"Q. And what happened?

"A. He told me if he would give me the order,—

"Mr. Thompson: I object to this. This is no part of the plaintiff's case. It is no part of the direct case of the plaintiff. I think that the plaintiff had finished with his direct examination. It is incompetent.

"General Peterson: The question has been raised by cross-examination that the boy was culpable in not seeing a railroad doctor.

"The Court: The court rules that at this time it is not part of the issues of the case and so the objection is sustained at this time."

It is inconsistent with the position taken by appellant in urging that objection, to insist here that proof of diligence in procuring treatment for his injuries was a part of respondent's case in chief, or that lack of it might be shown on cross-examination of respondent when such cross-examination related to nothing referred to in his direct

testimony. Parties to an action are bound by the theory on which they try it. (*Idaho Gold Dredging Corp. v. Boise Payette L. Co.*, 52 Ida. 766, 22 Pac. (2d) 147.) Furthermore, appellant presented its evidence, fully, at the proper time, when offering proof to sustain the allegations of its answer, and it was in no way prejudiced by the rulings of the court on its cross-examination of respondent.

Rulings admitting evidence, on rebuttal, of treatments received by respondent from a chiropractor, and of a statement made to him by the section foreman to the effect that he would like to send respondent to a doctor, but if he did so he would be discharged, are assigned as error. This evidence was admissible and was properly confined to rebuttal of appellant's theory and evidence that respondent had neglected to avail himself of medical and surgical assistance, made available to him by it, and that his failure so to do was largely responsible for his disabled condition.

The admission of testimony by respondent, in rebuttal, concerning an opinion with respect to his condition, expressed by Dr. Young at the Pocatello General Hospital, is assigned as error.

Dr. Young, a physician and surgeon on appellant's medical staff, called by it as a witness, testified to having made three examinations of respondent, one of which was at the hospital; that the usual treatment for respondent's condition was "rest in bed, support to the hips and heat"; that if respondent had immediately reported to him and had applied treatment such as would ordinarily be applied or prescribed, he thought it would have resulted in a cure in six or eight weeks; that he believed respondent could yet be cured, but his cure had been made more difficult and uncertain by delay in applying proper treatment. It does not clearly appear whether the doctor was acting as respondent's physician, or as appellant's employee and agent, at the time of making the examination referred to in the following testimony:

"Q. What did Dr. Young say, if anything on that occasion, at the time or immediately after the occasion at the hospital, as to whether you would get over it?

"Mr. Thompson: That is objected to as incompetent, irrelevant and immaterial, also hearsay and no proper foundation is laid.

"The Court: The question of diligence on the part of the plaintiff and of his parents, if it is imputable,—I think he may answer.

"A. He said to me as soon as the weather would clear up, that my pains would leave me."

Respondent's father testified:

"Q. What did Dr. Young say, if anything in your presence on the date mentioned, after he, at the time of the examination, about the injuries to your son?

"Mr. Thompson: We object to that as incompetent, irrelevant and immaterial, and calling for hearsay testimony and not binding upon the defendant and also no foundation has been laid.

"The Court: He may answer.

"A. He said, 'The boy is young and will grow out of this, and as soon as the weather clears up, he will get out of it and be just as good as ever before.' "

The rulings admitting the testimony were not erroneous. This testimony was properly admitted as rebuttal to evidence introduced by appellant that respondent and his parents had been negligent in failing to procure for him proper medical and surgical treatment. Upon this theory the testimony was admissible regardless of whether Dr. Young was acting as respondent's physician, or as a member of appellant's medical staff, when he made the examination, and when whatever advice he gave was given with respect to respondent's condition and his prospects of recovery.

The record does not disclose any prejudicial error and the judgment should be affirmed.

Holden, J., concurs in this dissenting opinion.